[Crim. No. 2966. Second Appellate District, Division One.—July 21, 1937.]

THE PEOPLE, Respondent, v. JAMES L. NICKELL, Appellant.

Keith R. Jensen for Appellant.

U. S. Webb, Attorney-General, R. S. McLaughlin, Deputy Attorney-General, Buron Fitts, District Attorney, Jere J. Sullivan and Arthur Veitch, Deputies District Attorney, for Respondent.

HOUSER, P. J.—From a judgment of conviction of the commission by him of the crime of subornation of perjury, as well as from an order by which his motion for a new trial was denied, defendant has appealed to this court.

On the point that "the verdict is contrary to law and the evidence", appellant asserts that, considering the language of the statute (sec. 1103a, Pen. Code), which provides that "perjury must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances", the evidence was insufficient to support the judgment.

It appears that the prosecution of defendant arose from an investigation and subsequent consideration with reference to certain testimony that had been given by one Scott in

a civil action for the recovery of a judgment for damages which were alleged to have been occasioned in an automobile collision wherein an automobile that was being operated by the plaintiff in the civil action ran into the rear of a trailer that was attached to an automobile truck. In that action the negligence of the defendant therein was alleged to have been the operation of said truck and trailer "without sufficient lights and in such a position upon the highway that the same was obscure and not plainly visible and could not be seen by a person using ordinary care".

It thus becomes apparent that the alleged negligent act of the defendant in the civil action in failing to maintain the required statutory lights upon the trailer in question (secs. 100d, 106, 110, Calif. Vehicle Act) constituted the principal negligence of which the plaintiff in that action complained.

By section 127 of the Penal Code, the crime of subornation of perjury is defined as follows: "Every person who wilfully procures another person to commit perjury is guilty of subornation of perjury, and is punishable in the same manner as he would be if personally guilty of the perjury so procured."

Appellant's complaint with reference to the sufficiency of the evidence to sustain the judgment is therefore reduced to a consideration of, first, whether the evidence which was given by Scott on the trial of the civil action was in anywise material, especially as far as it might or did concern the question which related to lights on the trailer; and secondly, as to whether defendant induced Scott to give that testimony; or, as is specified in the statute under which defendant was prosecuted, whether Scott was "procured" by defendant. In that regard, from an examination of the record herein, it appears that on the trial of the civil action, in substance, Scott testified that on the morning of the accident, which took place on the "Ridge Route", about 2 o'clock A. M., he was standing by the side of the road, and saw a truck and trailer, loaded with "long pieces of iron"; that he "knew whose truck it was" although he did not see any marks; that he knew a Lang transportation truck "any time"; that his cousin used to drive one; that it is distinguished from other trucks "by the color more than anything else"; that he saw no "similarly loaded" truck or trailer; that there were no lights of any kind upon the rear of the load or the rear of the trailer.

On the trial of the instant action, Scott testified that his testimony at the trial of the civil action was false in every particular. In corroboration of his statement that he was in Los Angeles and not upon the "Ridge Route" road at the time the accident occurred, testimony of five witnesses was produced to the effect that Scott worked at two different jobs, one of which occupied his time from 5 o'clock P. M. until 12 o'clock P. M., and that he was not absent from either of his two places of employment on the evening preceding the date of the accident. The prosecution also presented evidence, in substance, that the trailer was equipped with rear lights which were burning both before and after the accident, and that a lighted lantern was suspended from the end of the projecting iron with which the trailer was loaded.

With reference to the sufficiency of the evidence concerning the procurement of Scott's perjury by defendant, the record contains testimony by Scott substantially as follows:

"My first knowledge that I was to be a witness in that case came from Mr. Nickell on June 13, 1936. We talked in the camp (C. C. C.) for a little while. . . . He told me that the case was going to trial, and he said, '*I want to use* you,' I think he said the following week, and *he had a subpoena for me.* So I told him I was going to San Diego and had my transportation . . . and he told me he thought he could get my transportation down there. . . . I said, 'Well, I have to go, then, because you have already served a subpoena on me,' and he said, 'Yes.' I did not ask for permission (to leave the camp) . . . ; Mr. Nickell asked. . . . So we drove over to the Ridge Route that afternoon in Nickell's car, he driving. We went to where Nickell pointed out to me that the accident had occurred. Up to that time I had never been to that place. . . . He said, 'Right here is where the accident occurred,' . . . and then pointed, showed me, . . . On the way up from Fillmore to this place there had been conversation between Nickell and me. We got to talking about *what kind of a story could be used.* I said, '*I have to have some kind of a story*'. . . . So we talked whether I would be a hitch-hiker or ride by on a motorcycle. He said, 'You could drive a car by,' and figured out different ways to get by without anybody remembering seeing me go by. He said, 'If we go by on a motorcycle, that won't work, because the truck driver would remember there was no motorcycle that went by.' So I said, 'Very well; I can be hiding

back over there.' . . . and he said, '*All right, that will be a good story*'. . . . After that, between the 13th of June and the 23rd of June, 1936, Nickell and I had a number of conversations. Nickell told me *we had to have the lights out on the truck;* he said *he needed to have the lights out,* . . . Before and during the trial I asked Mr. Nickell, 'What can happen if there is a slip-up?' and he said, 'They can't do anything to you as long as you keep your mouth shut.' . . . Nickell told me that whatever Mr. McCarty gave me, he would give me the same thing, plus my expenses to San Diego . . . if he had given me $20, after it was all over that Mr. Nickell would give me $20.''

Two witnesses testified that about June 12, 1936, defendant came to the office of a forest ranger and asked for Scott, who was then working in the C. C. C. camp, and stated that *he wanted Scott as a witness;* that "*he had no case without Robert Scott*".

From a consideration of the foregoing, it would appear most apparent, not only that the testimony which Scott gave on the trial of the civil action was material to the issues therein involved, especially on the controlling issue of whether the defendant in that case was guilty of negligence in his failure to maintain lights on the rear of the trailer; but also, that defendant induced Scott to give his false testimony with reference thereto; in other words, that defendant "procured" Scott "to commit perjury". (Sec. 127, Pen. Code.) Furthermore, that the commission of the crime of subornation of perjury by defendant was established by the testimony of Scott "and corroborating circumstances", as required by the provision of section 1103a of the Penal Code, to which attention hereinbefore has been directed.

With reference to an essential element of the crime of perjury, to wit, knowledge by the perjurer of the falsity of his sworn testimony, coupled with his freedom of thought and action regarding the act as far as menace, threats or other kindred inducing causes on the part of other persons might have been concerned—in other words, whether the perjured testimony was given freely, voluntarily and "knowingly",—as applied to the instant matter, it may suffice to state that notwithstanding some statements which appear in the testimony that was given by Scott which might indicate his lack of knowledge of the fact that he had not told the truth in the civil action, and that such misstatements of facts had

not been wilfully made,—by his remaining testimony it is established nearly to a degree of demonstration, not only that at all times he was clearly and fully aware of the falsity of each of his material declarations of facts, but as well, that (aside from the fact that he had been "procured" by. defendant) at no time was he acting in that regard under any untoward influence of any person whomsoever. Scott's soundness of mind was not questioned, and he, better than any other person, must have known whether the testimony that was given by him on the trial of the civil action was false.

At most, the evidence that was received on that point in the instant action was conflicting; and the question of Scott's knowledge as to the falsity of his testimony was one that was to be answered by the jury solely. It follows that, as related to such a situation, appellant's specification of error herein cannot be permitted to prevail. In the same connection, appellant contends that in order that the judgment may be sustained, even though Scott knew that his testimony in the civil action was false, it must also appear that defendant Nickell "knew that Scott knew that it was false". Adverting to the general statement of facts as outlined within the testimony hereinbefore set forth, it would seem a waste of time and energy to point out therein the various particulars of testimony by and from which complete knowledge on the part of Nickell either is clearly shown or properly may be inferred, to the effect that he and Scott, acting in concert one with the other, not only formulated the general plan of having Scott swear falsely to material facts in the civil action, but as well, that they openly and repeatedly discussed, and finally agreed, one with the other, upon the detailed items of such testimony. Appellant's point is wholly lacking in merit.

■ Regarding the conduct of the trial, appellant has directed the attention of this court to each of several instances in which it is asserted that error was committed either in the admission of certain testimony over the objection of defendant, or, in response to objection thereto by the People, in refusing to permit a witness to answer a question that theretofore had been propounded to him by counsel for defendant. But with respect thereto, in no instance has appellant undertaken to advise this court as to how, if at all, the error of which he complains could have adversely affected

his interest. At most, neither the possibly admissible evidence which assumedly was erroneously rejected, nor that evidence which may have been erroneously admitted, was of more than trifling importance. Even though all of appellant's assignments of error in that regard should be held to be tenable (which is not at all conceded), in their combined possible effect, considered with the evidence that was adduced on the trial of the action, it is most improbable that in the absence of such asserted errors, the verdict that was returned would have been in anywise different from that which was returned by the jury. In such circumstances, as far as the several points thus made are concerned, the judgment may not be disturbed. (Sec. 4½, art. VI, Const.)

Appellant asserts that his defense was seriously and adversely prejudiced by the action of the trial court, in that, in the course of the trial, and in the absence of the jury, the trial judge exonerated the bail of defendant and ordered that defendant be kept in the custody of the sheriff; also, that at the same time the trial court ordered that the witness Scott be likewise detained. Appellant has furnished this court with no authority with relation to his claim of error, and respondent has completely ignored such assignment. However, it appears that since 1872 the basic law with reference to the matter, as far as a defendant in a criminal action is concerned, is as follows: ''When a defendant who has given bail appears for trial, the court may, in its discretion, at any time after his appearance for trial, order him to be committed to the custody of the proper officer of the county, to abide the judgment or further order of the court, and he must be committed and held in custody accordingly.'' (Sec. 1129, Pen. Code.)

Notwithstanding the express provisions of section 6 of article I of the Constitution, and section 1271 of the Penal Code, which, in effect, permit a defendant who has been charged with any offense not ''punishable with death'' to give ''bail before conviction, as a matter of right'', it has been held that ''the substantial rights of an accused are not prejudiced by an order of the court, in the presence of the jury, after argument of counsel and before the retirement of the jury to consider as to their verdict, that the sheriff take accused into custody, as indicating the guilt of accused in the opinion of the court, even if the order could be held erroneous''. (3 Cal. Jur. 1040; *Ex parte Voll*, 41 Cal. 29;

*People* v. *Williams,* 59 Cal. 674.   See, also, *People* v. *Beauchamp,* 49 Cal. 41; *In re Henley,* 18 Cal. App. 1 [121 Pac. 933]; *In re Aydelotte,* 97 Cal. App. 163, 166 [275 Pac. 510].)

Aside from the constitutional provision that ''witnesses shall not be unreasonably detained . . . '', and the several statutory provisions that are embraced within sections 878 to 882, inclusive, of the Penal Code,—none of the latter of which has any application to the situation here presented,— no authority has been discovered that could justify the order that was made by the trial court in ordering that the witness Scott ''be remanded into the custody of the sheriff''; but whatever may be the law with respect to the authority of the trial judge in the premises, unless it properly may be ruled that the assumed misconduct of the trial court in that regard prejudiced the defendant in his substantial rights, he has no right to complain. It will be remembered that the order was not made in the presence of the jury; and to assume that in the course of the trial the jury thereafter learned of the fact that the order had been made and therefrom drew the inference that the trial judge believed that both the witness and the defendant were guilty of perjury and subornation of perjury, respectively, would be but a ''wild conjecture''. In itself, and especially, the circumstances considered, together with the evidence herein, the error could not properly form the basis for a reversal of the judgment.

■ One of appellant's specifications of error is couched in the form of a question, as follows: ''Was Scott's testimony to all legal intents and purposes that of an accomplice, or should it be given more weight and credence than that of an accomplice?'' In that regard, counsel ''admits that by the weight of authority in this and other jurisdictions, including the case of *People* v. *Layman,* 117 Cal. App. 476 [4 Pac. (2d) 244], the 'suborned' is not an accomplice of the 'suborner' . . . '' Notwithstanding that admission, in the light of the provisions of sections 31 and 971 of the Penal Code, and in consideration of some expressions that are contained within the opinion in the case of *People* v. *Coffey,* 161 Cal. 433 [119 Pac. 901], appellant presents an interesting argument. But in view of what heretofore has been said with respect to the sufficiency of the evidence, and of counsel's admission with respect to the authorities ''in this and other jurisdictions'' to the effect that the person who has

been suborned is not an accomplice, it would seem a useless task for this court to attempt to overturn practically all existing authorities which heretofore have declared the law to be contrary to appellant's contention in that regard.

Appellant next directs attention to the fact that the trial court not only refused to give to the jury certain instructions which were offered by defendant, but also, that at the request of the people, certain other instructions were given to the jury wherein the law was either erroneously or incompletely stated. But in connection with appellant's criticism in each of those respects, it appears that he has violated the provisions of section 3 of rule VIII of the Supreme Court and the District Courts of Appeal, in that as to the instructions which were thus refused, he has failed to print them in full in his brief; nor has he either printed therein "all instructions given, bearing upon the subjects covered by the refused instruction, . . . or the substance thereof clearly stated, with citation to the line and page of the transcript where such instructions may be found . . . " And as to the instructions "attacked as erroneous", he has failed to print "in full . . . all other instructions given bearing upon that subject". That such a situation is sufficient to justify an appellate tribunal in its refusal to give consideration to appellant's specifications of error in that regard, see *People* v. *Walsh,* 14 Cal. App. (2d) 511 [58 Pac. (2d) 740], and *People* v. *Hickey,* 16 Cal. App. (2d) 726, 732 [61 Pac. (2d) 532]. Notwithstanding the position in which appellant has thus placed himself, this court has carefully considered each of his suggestions with reference to the several instructions to which he has referred; and although such suggestions are not utterly devoid of merit, none of the specified and assumed errors of which complaint is made, nor all combined, present such a situation that therefrom it should follow that the judgment should be reversed. In other words, the so-called errors, while perhaps not trifling, were of small consequence and could not by any fair reasoning have affected or in any way have influenced the verdict.

Finally, appellant presents an argument which deals with the credit that should properly attach to the testimony of the witness Scott,—all of which might be pertinent in the trial court, but which can serve no useful purpose on appeal. From a consideration of Scott's testimony, although it fairly appears that it was subject to many of the criticisms which

appellant has made, of it, the several inconsistencies which may be found therein are not, even in the aggregate thereof, of that consequence and character that would justify this court in declaring that the questioned testimony was so inherently improbable that no dependence should have been placed thereon, with the result that the evidence now may be said to have been insufficient to support the judgment.

The judgment, and the order by which defendant's motion for a new trial was denied, are affirmed.

York, J., and Doran, J., concurred.