[Crim. No. 11955. First Dist., Div. Two. Sept. 13, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL WAYNE OBIE, Defendant and Appellant.

**COUNSEL**

Edmund A. Duggan, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Gloria F. DeHart and Ina L. Gyemant, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

BRAY, J.*—Defendant appeals from judgment of the Humboldt County Superior Court after jury verdict, convicting him of violation of section 187 of the Penal Code (first degree murder).

### QUESTIONS PRESENTED

1. The court's failure to rule on the section 995 Penal Code motion.

2. Failure to set bail.

3. Defendant's clothes were properly admitted in evidence.

4. The fact of defendant's prior conviction was properly admitted.

5. No error in giving CALJIC No. 8.21.

6. Defendant's admissions properly admitted.

7. No error in refusal of instructions on diminished capacity.

8. No error in allowing Dr. Harrison's testimony and partial reenactment of the crime.

9. No misconduct of prosecutor shown.

10. No incompetency of defense counsel.

### RECORD

Defendant was indicted for violation of section 187 of the Penal Code (murder). A motion pursuant to section 995 of the Penal Code was heard and submitted. The record fails to show that the motion was ever decided. A jury convicted defendant of the offense charged, murder, and fixed the degree as first. Defendant's motion for new trial was denied. Defendant appeals.

### FACTS

As defendant makes no claim that the evidence as admitted does not support the verdict, a brief statement of the facts will suffice. Late in the evening of August 5, 1972, the deceased, Alvin Orcutt, outside the Ishi Pishi Club in Humboldt County, asked defendant to drive with him, in the former's pickup truck, so that deceased would not get in a wreck.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

The next morning about 7 a.m. the truck was found off the road and down a steep embankment. Orcutt was found badly beaten and dead. The evidence indicated that defendant killed the deceased while robbing him. Defendant testified that an argument started between him and the deceased in the truck, a struggle ensued and defendant broke out of the truck, which started to roll down the embankment. However, deceased's injuries were shown to have been caused by repeated blows from a short blunt instrument and not from the wrecking of the truck. Among other incriminating evidence was defendant's bloodstained clothes and his admission to his cousin that he might have murdered a person with whom he was hitchhiking.

1. The section 995 Penal Code motion.

■ As stated, the trial court did not formally act on the motion after it was submitted. As the cause went to trial, it is reasonable to infer that the judge intended to deny the motion.

"[W]here the court, through inadvertence or neglect, neither rules nor reserves its ruling . . . the party who objected must make some effort to have the court *actually rule*. If the point is not pressed and is forgotten, he may be deemed to have waived or abandoned it, just as if he had failed to make the objection in the first place." (Witkin, Cal. Evidence (2d ed. 1966) § 1302, p. 1205; *People* v. *Staver* (1953) 115 Cal.App.2d 711, 724 [252 P.2d 700].) There was no reversible error in the failure to rule on the motion.

2. Bail.

■ Defendant contends that his original counsel, chosen by him, failed in his duty to defendant in not requesting bail at the arraignment. By virtue of the charge against him defendant was not entitled to release on bail (Pen. Code, § 1270; Cal. Const., art. I, § 6; *People* v. *Anderson* (1972) 6 Cal.3d 628, 657, fn. 45 [100 Cal.Rptr. 152, 493 P.2d 880]).

■ Defendant further charges that the trial judge's denial of bail during trial denied him of his constitutional rights. Section 1129 of the Penal Code gives the court the discretion once the trial has commenced to commit the defendant into custody even where he has previously been admitted to bail. (*People* v. *Nickell* (1937) 22 Cal.App.2d 117, 123 [70 P.2d 659]; *People* v. *Savage* (1944) 66 Cal.App.2d 237, 244 [152 P.2d 240].)

"This statute has been held to be constitutional and not violative of the right to bail [citations], nor is any hearing or showing required to be

made or notice given for the court to be able to exercise its discretion under the statute. [Citation.]" (*People* v. *Enos* (1973) 34 Cal.App.3d 25, 43 [109 Cal.Rptr. 876].)

There is nothing in the record to show that defendant could have made bail if one were fixed. Defendant's brief merely says, "Had bail been set, Appellant's friends and family may have been able to pledge their homes and farms to secure his release," and had he been admitted to bail, "he cannot say now what he might have found." As said in *People* v. *Enos, supra,* at page 43, "In any event, defendant has not made any showing that the conduct of his trial was prejudiced by his incarceration."

3. Defendant's clothes.

■ Defendant claims that his pants, shirt and boots were seized in an illegal search of his Uncle Antone's trailer. There was conflict in Antone's testimony with that of the officers concerning the circumstances of the search of his trailer in which the officers found the clothing. The officers testified that although Antone told them they could look around the trailer, they waited until they could get a consent form which he signed. Antone did not deny signing the form but claimed that he did not know he was signing a consent form. In any event, the court, out of the presence of the jury, weighed the testimony of all concerned and found that Antone had consented to the search and that there was no illegality in the seizure of the clothing.

Section 402 of the Evidence Code provides, in pertinent part, that the court may hear and determine the admissibility of evidence out of the hearing of the jury and "A ruling on the admissibility of evidence implies whatever finding of fact is prerequisite thereto." The trial court's attention was called to Antone's advanced age and the extent of his inability to see and hear "well," and the fact that he had had a college education. The trial court had the opportunity to observe him as he testified. The trial judge was in an excellent position to weigh these factors. ■ The power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences is vested in the trial court. "On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." (*People* v. *Manning* (1973) 33 Cal.App.3d 586, 599 [109 Cal.Rptr. 531].) ■ There can be no question but that the trial court's ruling on the admission of this evidence was supported by substantial evidence.

4. Defendant's prior conviction.

■ On cross-examination the prosecutor asked defendant if he had ever been convicted of a felony. Defendant replied "yes" before his counsel could object. Counsel then approached the bench and objected on the ground that under *People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1], the conviction would not have "any probative value in the case." In the discussion it appeared that defendant had suffered prior convictions of burglary and auto theft. The judge took the objection under consideration and the next day overruled it, at which time defendant was again asked if he had been convicted of a felony. On his affirmative reply no inquiry was made as to the character of the felony nor that he had been convicted of both burglary and auto theft.

Apparently defendant contends that the court before ruling should have made inquiry into the circumstances of the felony in determining whether its probative value was outweighed by any prejudice it may have cost defendant. *People* v. *Beagle, supra,* indicates the factors that must be considered in determining the probative value of an admission of a felony conviction as against the risk of undue prejudice. It does not require a hearing of the details of the felony or felonies involved. *People* v. *Beagle, supra,* at page 453, said, quoting from *Gordon* v. *United States* (1967) 383 F.2d 936, 940-941 [127 App.D.C. 343], that "acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity." The court further stated, at page 453, that "No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." Defendant's two convictions, burglary and auto theft, are crimes of stealing which *Gordon, supra,* states reflect on a man's honesty and integrity. The burden is on the defendant to show that his prior conviction or convictions did not involve deceit, fraud, cheating, etc. (*People* v. *Stewart* (1973) 34 Cal.App.3d 244, 248 [109 Cal.Rptr. 826]). *People* v. *Beagle, supra,* at page 453, states, ". . . 'The nearness or remoteness of the prior conviction is also a factor of no small importance.'" The record does not show the date of the admitted felony convictions. Respondent's brief states that defendant had been released from prison on his felony conviction approximately two years before the commission of the instant offense. It cannot be said that the conviction should have been excluded on the grounds of remoteness. "Remote convictions are not disregarded merely because they are remote. (Evid. Code, §§ 788, 352.)" (*People* v. *Stewart, supra,* p. 248.) "The general rule is that felony convictions bearing on veracity are admissible. We have previously said: 'The defendant must weigh the danger of impeachment by the introduction of prior convictions for every witness he calls for the defense. "The fact that the witness may

also be the defendant makes the choice more difficult but a denial of due process does not emerge from the circumstances." (*Adamson* v. *California,* 332 U.S. 46, 57-58. . . .)' . . . A reviewing court, however, should always give careful consideration to an exercise of a trial court's discretion in both the ruling and the timeliness of its ruling on the admissibility of the prior convictions." (*People* v. *Beagle, supra,* pp. 453-454.)

The court did not err in having defendant admit a single prior felony conviction, the details of which were not disclosed.

5. CALJIC No. 8.21.

Section 189 of the Penal Code provides that "All murder . . . which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary [or] mayhem . . . is murder of the first degree."

■ CALJIC No. 8.21, which defendant contends should not have been given, provides: "The unlawful killing of a human being, whether intentional, unintentional or accidental, which occurs as a result of the commission of or attempt to commit the crime of [robbery], and where there was in the mind of the perpetrator the specific intent to commit such crime, is murder of the first degree.

"The specific intent to commit [robbery] and the commission or attempt to commit such crime must be proved beyond a reasonable doubt."

■ Defendant contends that it must be shown that there was a *murder,* not merely a killing, and that to have a murder there must be a malicious killing and an intent to kill. Defendant concedes that this is not the law in California. Here, the only criminal intent which the prosecution has to show is the specific intent to rob and it is not required to prove a deliberate or premeditated killing or to prove an intent to kill. The same contention that defendant is making was made in *People* v. *Coefield* (1951) 37 Cal.2d 865 [236 P.2d 570], and rejected. In *People* v. *Stamp* (1969) 2 Cal.App.3d 203 [82 Cal.Rptr. 598] (cert. den. 400 U.S. 819 [27 L.Ed.2d 46, 91 S.Ct. 36]), during the course of a robbery committed by the defendants, one of the victims suffered a fatal heart attack because of the robbery. In holding that the felony murder rule of section 189 of the Penal Code applied, the court said that under that rule "a killing committed in . . . perpetration of or an attempt to perpetrate robbery is murder of the first degree. This is true whether the killing is willful, deliberate and premeditated, or merely accidental or unintentional, and whether or not the killing is planned as a part of the commission of the robbery. [Citations.]

"The doctrine presumes malice aforethought on the basis of the com-

mission of a felony inherently dangerous to human life. [Citations.] This rule is a rule of substantive law in California . . . . Under this rule no intentional act is necessary other than the attempt to or the actual commission of the robbery itself." (Pp. 209-210.)

Defense counsel, by some sort of involved and illogical interpretation of certain sections of the Penal Code, seems to argue that the Legislature never intended the provisions of section 189 to provide the rule which they so clearly pronounce. This contention is answered by the myriad of cases determined, at least since the amendment in code amendments 1873-1874, chapter 614, section 16, page 427, which interpreted the section as herein set forth. In footnote 3, page 210, *People* v. *Stamp, supra,* the court said, "In view of the fact that the Legislature has not seen fit to change the language of Penal Code section 189 since the decisions holding that the requisite malice aforethought is to be implied from the commission of those felonies inherently dangerous to human life, it must be presumed that these cases accurately state the law. (*People* v. *Hallner,* 43 Cal.2d 715, 720 [277 P.2d 393].)"

■ Obviously, the jury believed the prosecution's theory that the killing was committed during the perpetration or attempt to perpetrate robbery. Therefore, the jury had no option but to return a verdict of first degree murder whether the killing was done intentionally or accidentally. (*People* v. *Coefield, supra,* p. 869.) There was no error in giving CALJIC No. 8.21.

6. Defendant's admissions.

■ Allen J. Hooper, a former jailmate of defendant, testified that a couple of days after Orcutt's death defendant talked about a wreck while hitchhiking and indicated that he might have killed or murdered someone, and that he thought "they" were looking for him. Also, that he got money from the guy he "snuffed." Defendant objected to this testimony on the ground that the corpus delicti had not yet been shown. To prove the corpus delicti in this character of case it is only necessary to prove that the alleged victim is dead and that his death was caused by the criminal agency of another, not necessarily the defendant. (Perkins on Criminal Law (2d ed.) p. 100.) "The rule is that to authorize the reception and consideration by the jury of evidence of an extrajudicial confession or admission of a defendant, it is not required that the prosecution establish the corpus delicti by proof of a clear and convincing character, as is required to support a conviction. Slight proof is all that is required." (*People* v. *Cullen* (1950) 99 Cal.App.2d 468, 472-473 [221 P.2d 1016].) The testimony of the Humboldt County Coroner proved the death and the cause of death.

The testimony of Dr. Harrison, a physician pathologist, proved that death was caused by a criminal agency, as he explained that, based upon the wounds on the body and a diagram of the scene of the accident, the death was not caused by the truck falling down the hill but by the blows received. All this appeared before the admissions were offered in evidence. There was no error in allowing defendant's admission in evidence.

7. Diminished capacity.

"[T]he duty to give instructions, *sua sponte,* on particular defenses and their relevance to the charged offense arises only if it appears that the defendant is relying on such a defense, or if . . . [it] is not inconsistent with the defendant's theory of the case" *(People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913]). As hereinbefore shown, all the evidence proved, at best, was that at the time of the homicide, defendant was intoxicated, to what degree does not appear, nor does it appear that his intent to rob could not have been formed. He did not say that it was not, nor did his counsel in his argument to the jury, so contend. Defendant's defense was that the death was accidental, not through any act of his brought about through diminished capacity. "[A] defendant who urges that his mental capacity was impaired by voluntary intoxication at the time of commission of an offense, has the burden of going forward with evidence on that issue" *(People* v. *Harris* (1970) 7 Cal.App.3d 922, 926 [87 Cal.Rptr. 46]). There is absolutely no evidence in the record deserving of any consideration whatever that any claimed intoxication had any substantial effect on him or that he could not entertain the specific intent required for the crime of robbery. (See *People* v. *Vienne* (1973) 30 Cal.App.3d 266, 274 [105 Cal.Rptr. 584].)

"Although instructions should be given . . . whenever there is evidence that the defendant was unable to form the requisite specific criminal intent [citation], no such instructions need be given when there is no evidence from which a jury composed of reasonable men could have concluded that there was diminished capacity sufficient to negate the requisite criminal intent [citations]. The instructions need not be given when the evidence of diminished capacity is minimal. [Citations.]" *(People* v. *Carr* (1972) 8 Cal.3d 287, 294 [104 Cal.Rptr. 705, 502 P.2d 513].)

Although there was evidence that defendant had consumed a considerable amount of beer and whiskey during the day and evening, evidence of diminished capacity was minimal, if any. The evidence of intoxication at the time of the homicide was very slight and there was no evidence of diminished capacity. Defendant and his uncle testified to buying beer on the way to swimming, and drinking nearly a case of beer during the

day and beer and whiskey during the evening. At least five witnesses testified that defendant did not appear intoxicated. Defendant's own testimony negates any possibility that his capacity to intend to commit robbery was diminished in any way. He testified with clarity as to his version of the events leading to the death of the victim. There is no evidence that his drinking had any substantial effect on him, or that he was so intoxicated that he could not harbor the intent to rob. Thus, there is no substantial evidence of diminished capacity to support diminished capacity instructions. (See *People* v. *Bandhauer* (1967) 66 Cal.2d 524, 528 [58 Cal.Rptr. 332], cert. den. 389 U.S. 878 [19 L.Ed.2d 167, 88 S.Ct. 178].)

8. No error in allowing doctor's testimony and partial reenactment of the crime.

 Dr. Harold Harrison, a physician and forensic pathologist who performed an autopsy on the victim, testified as to the results of his investigation of the victim's death.[1] He detailed his findings as to the abrasions, contusions and lacerations of portions of the body, sublexation of the fourth thoracic vertebrae, multiple rib fractures with lung contusions, transverse basilar skull fracture and other conditions of the body. Based on a hypothetical question asked by the prosecution, using the doctor's findings, a photograph of the embankment over which the truck ran, the truck itself, a certain speed and a certain position of the body, the doctor opined that the victim's injuries were not caused by the accident, but by repeated blows from a short blunt instrument. The jury were taken to see the truck. Based on his analysis of the injuries and an examination of the pattern of the bloodstains, drips and runs, the doctor reenacted at the truck how the blows might have been dealt and how the victim reacted, causing the evidence in the truck.

The doctor was testifying within his special knowledge of forensic medicine and his conclusions were properly based on facts assumed from the evidence (Evid. Code, § 801). The subject was one not equally within the common experience of the jury (see *People* v. *Cole* (1956) 47 Cal.2d 99, 103 [301 P.2d 854, 56 A.L.R.2d 1435]).

" '[T]he general rule is that the trial court, in passing upon the qualification of a witness offered as an expert, has wide discretion, and an appellate court will not disturb its ruling in the absence of a manifest abuse of such discretion.' " (*People* v. *Busch* (1961) 56 Cal.2d 868, 878

---

[1]Defendant's statement that the doctor qualified only as a physician is incorrect. He also qualified as a forensic pathologist, explaining that "this consists of specialty study in this field of medicine and the law, particularly in regard to the investigation of violent death."

[16 Cal.Rptr. 898, 366 P.2d 314].) Since the witness was testimonially qualified and since the matter about which he testified was a proper subject of expert testimony, it was permissible to elicit his special knowledge through the use of a hypothetical question. (See *People* v. *Clay* (1964) 227 Cal.App.2d 87, 98 [38 Cal.Rptr. 431, 100 A.L.R.2d 1421].)

■ The doctor was entitled to use a photograph of the embankment as a part of the basis for his opinion. "An expert can express an opinion from a photograph just as he can from a hypothetical question stating the facts which appear in a photograph. [Citations.]" (*Poggetto* v. *Owen* (1960) 187 Cal.App.2d 128, 137 [9 Cal.Rptr. 395].)

■ The doctor's partial reenactment of what took place in the cab of the truck is somewhat similar to a motion picture of the artificial re-creation of an event, which pictures have been held to be admissible in evidence. "Protection against falsification or misrepresentation lies in the requirement of preliminary proof that the picture is an accurate reproduction of the scene or event which it depicts, and in the opportunity for cross-examination of the witnesses making such proof." (*People* v. *Dabb* (1948) 32 Cal.2d 491, 498 [197 P.2d 1].) In the instant case, defendant's extensive cross-examination thoroughly tested the basis upon which the doctor formed his opinion and the enactment of the crime. The doctor's testimony was within the bounds of expert opinion testimony.

9. No misconduct.

■ Defendant contends that the prosecutor committed misconduct in his final argument in referring to a photograph of the deceased which had not been admitted in evidence. The prosecutor did say "Look at that photo there. I can assure you that is a dead man." The record fails to show to what photograph the prosecutor was pointing. The court did exclude certain photographs of the deceased taken at the autopsy. However, there were admitted into evidence two photographs of the truck and the victim's body taken at the scene. We cannot assume that the reference was to one of the photographs refused admission, when there were two of the victim's body in evidence. Even assuming that the reference was to a photograph not admitted, the misconduct, if any, was clearly harmless, particularly as two diagrams depicting the areas of the victim's injuries and the two photographs of his body were in evidence.

10. No incompetency of defense counsel.

■ Defendant charges trial defense counsel with ineffectiveness and incompetency. The charge is the failure to challenge the jury panel because

there were no Indians on it, defendant being an Indian, and failure to move for change of venue.

Defendant makes no showing that Indians are not drawn as jurors in Humboldt County, nor that jury panels are not drawn from the entire county. In *People* v. *Jones* (1973) 9 Cal.3d 546, 553 [108 Cal.Rptr. 345, 510 P.2d 705], the court held that "a jury drawn . . . from an entire county wherein the crime was committed . . . will satisfy the constitutional requirement of 'an impartial jury of the State and district wherein the crime shall have been committed' (U.S. Const., 6th Amend.) . . . ." There is no showing that the jury panel violated the constitutional requirement of an impartial jury.

As to the claim of adverse publicity, defendant makes no showing that the newspaper articles concerning this case are inflammatory or productive of overt hostility or of such character as would justify a change of venue. In *People* v. *Hillery* (1974) 10 Cal.3d 897 [112 Cal.Rptr. 524, 519 P.2d 572], the court said, with reference to change of venue because of publicity, "We have no reason to believe that defense counsel were unaware of these decisions or that their failure to move to change venue stems from incompetence of counsel; it is more likely that counsel did not so move because they were satisfied that the jury actually selected would give defendant a fair trial." (Pp. 900-901.)

In the instant case there is nothing to show that defense trial counsel's acts in the challenged matters deprived defendant of his right to a fair trial nor reduced his trial to a farce or a sham (*People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487]), nor that he had any grounds for believing that the jury actually selected would not give defendant a fair trial.

Judgment affirmed.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied October 11, 1974, and appellant's petition for a hearing by the Supreme Court was denied November 8, 1974.