[Crim. No. 12838. First Dist., Div. One. May 22, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
ARNETT SPEARS, Defendant and Appellant.

Dennis K. Rothhaar, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Terry A. Douglas, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, J.**—Appellant has appealed from an order admitting him to probation on condition, among others, that he serve six months in the county jail. This order followed his conviction of battery on a policeman, in violation of sections 242 and 243 of the Penal Code, by verdict of a jury which was unable to agree with respect to a similar charge involving a second policeman. This count was dismissed at sentencing. A third

such charge was dismissed during the trial on the motion of the defendant. The charges arose when the police, in an attempt to break up alleged gambling in a public park, undertook to arrest those believed responsible while confronted by a hostile group. Defendant does not question that there is evidence, which if believed, supports a finding that he struck the officer named in the count on which he was convicted. His attack on his conviction is predicated upon the make up of the jury panel which was summoned and available for the trial of his case. His counsel states, "Appellant is a Black man who was arrested in a confrontation between a large group of Black men and women and a large group of predominately white policemen. Appellant challenged the composition of the panel from which his jury was chosen because it was not a representative cross-section of residents of the judicial district where the crimes allegedly were committed. His motion was denied."

The offense was committed in the City of Richmond in Contra Costa County. 1970 census data submitted in support of defendant's contentions indicates that of a total county population of 555,805, 79,043, or 14.22 percent, resided in the City of Richmond, or, if the larger Richmond census division area is considered, 112,389, or 20.22 percent, of the county population would be found in that area. Of the latter figure, 32,138, or 28.60 percent, were listed as Blacks, whereas in the county as a whole there were 41,620, or 7.49 percent, Blacks. The next highest concentration of Blacks was found in the Pittsburg area in the northern part of the county.[1]

In Contra Costa County the principal seat of government is at Martinez, but there is a branch of the superior court in Richmond. Although defendant suggests that the best solution to the situation of which he complains would be to require trial of all offenses committed in

---

[1]The record does not indicate that the trial court was furnished with sufficient information to enable it to take judicial notice of the census data on which the defendant relies on his appeal. (See Evid. Code, § 453.) The only data referred to by the attorney for the moving codefendant (defendant joined in that motion) were the population of the county, 555,805, an erroneous reference to 423,000 persons of African descent, the population of the City of Richmond, 79,043, the Black population of the Richmond census division [32,138] as approximately 32,000, and an erroneous computation, by use of the latter figure, that the city population was 40 percent Black. The trial court and this court may take judicial notice of the census records. (See Evid. Code, § 452, subd. (h); *Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]; and *Board of Education* v. *Watson* (1966) 63 Cal.2d 829, 836 [48 Cal.Rptr. 481, 409 P.2d 481].) Nevertheless, there is merit to the People's contention that on appeal the defendant must rest on the record made in the trial court. (See *People* v. *Williams* (1970) 2 Cal.3d 894, 910 [88 Cal.Rptr. 208, 471 P.2d 1008] [cert.den. (1971) 401 U.S. 919 (27 L.Ed.2d 821, 91 S.Ct. 903)].)

Richmond in that city, with jurors selected from that area; he recognizes that the law does not require such a procedure. (See *People* v. *Jones* (1973) 9 Cal.3d 546, 553 [108 Cal.Rptr. 345, 510 P.2d 705]; *People* v. *Obie* (1974) 41 Cal.App.3d 744, 758 [116 Cal.Rptr. 283]; and *Adams* v. *Superior Court* (1972) 27 Cal.App.3d 719, 727-730 [104 Cal.Rptr. 144].) He contents himself with asserting that the jury in this case was selected in a manner which discriminated against members of his race, and that as constituted it denied him his constitutional right to a jury drawn from the vicinage of the crime.

On the day the case was called for trial the jury pool for the superior court consisted of 210 names. The first 109 were sent to the department in which defendant was to be tried. Of the 109 listed, one proved to be a resident of Alameda County. Six or 5.50 percent of the 109 were from Richmond. Sixty-three or 57.80 percent of the original panel were from the Concord, Lafayette, Orinda and Walnut Creek areas, where the percentage of Blacks range from 0.20 percent to 0.35 percent and averaged but 0.26 percent. Of the 101 remaining jurors, 14 were from Richmond, so of the total 210 jurors summoned 20 or 9.52 percent were from Richmond.

In *People* v. *Jones, supra,* 9 Cal.3d 546, the court reviewed applicable decisions of the United States Supreme Court[2] and concluded: ". . . a criminal defendant in a state criminal prosecution has a constitutional right to be tried by a jury drawn from, and comprising a representative cross-section of, the residents of the district wherein the crime shall have been committed." (9 Cal.3d at p. 551, and see p. 556.) In that case the court determined, "Although a jury drawn either from an entire county wherein the crime was committed or from that portion of a county wherein the crime was committed will satisfy the constitutional requirement of 'an impartial jury of the State and district wherein the crime shall have been committed' (U.S. Const., 6th Amend.) a jury drawn from only a portion of a county, exclusive of the place of the commission of the crime, will not satisfy the requirement." (*Id.,* p. 553. See also, *id.* p. 556; and *People* v. *Casillas* (1973) 33 Cal.App.3d 1078, 1080 [109 Cal.Rptr. 579] [hg. den. Oct. 10, 1973]. Cf. *People* v. *Obie, supra,* 41 Cal.App.3d 744, 758; *People* v. *Powell* (1974) 40 Cal.App.3d 107, 120-123 [115 Cal.Rptr. 109] [hg. den. Sept. 9, 1974]; and *People* v. *Williams* (1973) 36 Cal.App.3d 262, 272 [111 Cal.Rptr. 378].)

---

[2]*Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444]; *Williams* v. *Florida* (1970) 399 U.S. 78 [26 L.Ed.2d 446, 90 S.Ct. 1893]; and *Peters* v. *Kiff* (1972) 407 U.S. 493 [33 L.Ed.2d 83, 92 S.Ct. 2163].

Support for defendant's position is found in the opinion of Marshall, J. in *Peters* v. *Kiff* (1972) 407 U.S. 493 [33 L.Ed.2d 83, 92 S.Ct. 2163], wherein it recited, "When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented." (407 U.S. at pp. 503-504, fn. omitted. [33 L.Ed.2d at pp. 94-95].[3] See also *Swain* v. *Alabama* (1965) 380 U.S. 202, 204 [13 L.Ed.2d 759, 763-764, 85 S.Ct. 824]; *Adams* v. *Superior Court* (1974) 12 Cal.3d 55, 59-60 [115 Cal.Rptr. 247, 524 P.2d 375]; and *People* v. *Superior Court (Dean)* (1974) 38 Cal.App.3d 966, 970 [113 Cal.Rptr. 732].)

In *People* v. *Goodspeed* (1972) 22 Cal.App.3d 690 [99 Cal.Rptr. 696], the court reviewed a contention that a grand jury was improperly constituted because persons unwilling to serve had been excluded. The court observed, "The rule upon which defendant relies is premised upon the concept an impartial jury must be drawn from a cross-section of the community [citations]; is based on the conclusion the systematical and purposeful exclusion from a grand jury of a class of persons in the community denies due process and equal protection of the law [citations]; applies only to the exclusion of members of an identifiable group in the community [citations]; and embraces generally groups identified by race, sex, age, social or economic status, religious belief, educational attainment, political affiliation or geographical background. [Citations.]" (22 Cal.App.3d at p. 703. See also *People* v. *Superior Court (Dean), supra,* 38 Cal.App.3d 966, 970.)

■ The burden of proof is on the defendant to show that there has been a systematic and purposeful exclusion of members of an identifiable group in the community. (*Swain* v. *Alabama, supra,* 380 U.S. 202, 205 [13 L.Ed.2d 759, 764]; *People* v. *Superior Court (Dean), supra,* 38 Cal.App.3d at p. 971, fn. 5; and *People* v. *Goodspeed, supra,* 22 Cal.App.3d 690, 702.) On the one hand it is not enough to show that the particular segment of the entire trial jury list from which the trial jury was selected failed to

---

[3]It has been pointed out that since only three justices subscribed to Justice Marshall's opinion, the ruling of the case only extends to the situation where citizens have been excluded from jury service on account of race, color or previous condition of servitude as prohibited by 18 United States Code section 243. (See *People* v. *Superior Court (Dean)* (1974) 38 Cal.App.3d 966, 972-975 [113 Cal.Rptr. 732].)

represent all important population concepts. (See *Swain* v. *Alabama, supra,* 380 U.S. 202, 208 [13 L.Ed.2d 759, 766]; and *People* v. *Superior Court (Dean), supra,* 38 Cal.App.3d 966, 971, fn. 4.) In the former case the court observed: ". . . a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. [Citations.] Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group." (380 U.S. at p. 208 [13 L.Ed.2d at p. 766].) On the other hand, it has been recognized "that official compilers of jury lists may drift into discrimination by not taking affirmative action to prevent it. In formulating a panel for a grand jury endowed with the criminal indictment function, officials must adhere to a standard more stringent than mere absention from intentional discrimination; they have an affirmative duty to develop and pursue procedures aimed at achieving a fair cross-section of the community." (*People* v. *Superior Court (Dean), supra,* 38 Cal.App.3d at p. 972, fn. omitted. See also *People* v. *Powell, supra,* 40 Cal.App.3d 107, 133.)[4]

■ With these precepts in mind the record in this case may be examined. The requisites governing the periodic selection of the number of trial jurors that will be required are prescribed in sections 205 and 206 of the Code of Civil Procedure. (See Pen. Code, § 1046.) Section 205 provides, "The selections and listings in each county shall be made at random of persons suitable and competent to serve as jurors, and in making such selections there shall be taken only the names of persons who are not exempt from serving, who are in the possession of their natural faculties, who are not infirm or decrepit, who are of fair character and approved integrity, and who are of sound judgment." Section 206 provided at the time of defendant's trial, and now provides in pertinent part, "The names for the trial jury list shall be selected from the different wards or judicial districts of the respective counties in proportion to the

[4]Recognition of the foregoing principle renders it unnecessary to consider defendant's argument, predicated on precedents from other fields of alleged discrimination, that it is the responsibility of the courts to cure the evils of discrimination and segregation whatever its cause. (See *Serrano* v. *Priest, supra,* 5 Cal.3d 584, 604 [wealth available for education]; *Calderon* v. *City of Los Angeles* (1971) 4 Cal.3d 251, 260 [93 Cal.Rptr. 361, 481 P.2d 489]; *Castorena* v. *City of Los Angeles* (1973) 34 Cal.App.3d 901, 912 [110 Cal.Rptr. 569]; *D'Adamo* v. *Cobb* (1972) 27 Cal.App.3d 448, 450 [103 Cal.Rptr. 813] [legislative apportionment]; *San Francisco Unified School Dist.* v. *Johnson* (1971) 3 Cal.3d 937, 951 [92 Cal.Rptr. 309, 479 P.2d 669] [cert.den. (1971) 401 U.S. 1012 (28 L.Ed.2d 549, 91 S.Ct. 1266)]; *Jackson* v. *Pasadena City School Dist.* (1963) 59 Cal.2d 876, 881 [31 Cal.Rptr. 606, 382 P.2d 878] [school segregation]; and *Hardy* v. *Stumpf* (1974) 37 Cal.App.3d 958 [112 Cal.Rptr. 739] [discrimination by sex].)

number of inhabitants therein, as nearly as the same can be estimated by the persons making the lists." (Stats. 1963, ch. 1412, § 1, p. 2949, amended in other particulars Stats. 1974, ch. 806, § 3.)

No evidence was offered or introduced concerning the identity or characteristics of the entire list of regular jurors (see Code Civ. Proc., §§ 208-210), or concerning the procedures by which they were selected. Defendant, therefore, has failed to establish either that there was systematic and purposeful exclusion of either Blacks or residents of the city or district in which the crime was committed from the master list, or that the procedures followed, whatever they might have been, failed to achieve a fair cross-section of the community on the master regular jury list.

Defendant's attack is on the panel drawn to attend upon his trial. (See *id.*, §§ 211 and 214-220; and Pen. Code, § 1046a.) There is nothing in the record which indicates that the panel was not selected by lot as prescribed by the statutes except defendant's mathematical conclusion that the results indicate that there was no random selection. This formula and the conclusions defendant seeks to evoke from it were not presented to the trial court. Defendant, therefore, cannot claim error on the showing made on his behalf there. A mere inconsistency between the proportion of jurors on the panel for a particular trial from a given area, and the proportion of the population from that area does not show a purposeful or negligent systematic exclusion of persons eligible for jury service from that area. The record does not indicate what proportion of the names in the "trial jury box" were initially from the area in question. The People suggest, however, that even on the day in question, of the total number of jurors summoned, 210, there were 14 residents from the area among the 101 not called for defendant's trial, making 20 out of the total number.

In *People* v. *Superior Court (Dean), supra,* the court indicated, ". . . constitutional attack on grand jury composition may be supported by statistics which demonstrate discriminatory result rather than discriminatory design." (38 Cal.App.3d at p. 972.) If defendant's mathematical approach is to be considered, despite the failure to present it to the lower court, guidance is to be found in *People* v. *Powell, supra,* 40 Cal.App.3d 107. There, as here, "appellants' primary assault was based upon an attempted showing that the actual number of persons selected for jury service from designated areas was so disproportionate to the expected

probable draws that the burden of proving the legality of the venire shifted to the People." (40 Cal.App.3d at p. 124.) Unlike that case, here no evidence was introduced to establish a prima facie case that the jury venire was selected at random. (Cf. *id.,* at pp. 125-127.) Nevertheless, in view of the burden of proof on the defendant and the presumption that the law has been obeyed, it is necessary to first examine the nature of defendant's mathematical computations to determine whether they constituted substantial relevant evidence of discrimination.

The first obvious error is the use of the list of jurors for the particular trial rather than the general panel as a predicate for the assertion that there was any discrepancy at all. The second error is the use of the total population as the base for determining the proper proportion of jurors. The base should be the number of persons eligible for jury duty. The use of registered voters for that purpose has generally been approved. (See *People* v. *Powell, supra,* 40 Cal.App.3d at p. 126.) Not only do defendant's figures disregard infants and others ineligible to serve, but, as noted, in *People* v. *Powell, supra,* "[The] disregard of the fact that not all of the adult persons were registered voters makes her conclusions almost irrelevant and certainly not compelling." (*Id.,* at p. 130.) The court examined the formula used by the defendant, which appears to be similar to that presented in this case, and concluded as follows: "The judicial system should pay attention to evidence that shows an apparent and meaningful disparity between the presence of identifiable segments of the community—racial, economic, ethnic—and their absence from the jury venires. From demonstrated improbabilities courts may infer that the selection system is purposefully or systematically excluding certain segments of the community. [Citations.] The procedural consequence of such a demonstration is to shift the burden of proof to the prosecution to demonstrate a justifiable and rational explanation for the disparity. Whether or not a prima facie case has been made out will turn on whether or not the disparity has been proven and then only if the differential constitutes a number that would probably have an effect on the quintessence of the entire venire." (*Id.,* at pp. 132-133.)

As in *People* v. *Powell, supra,* it is concluded that the factors offered by defendant to establish a material deviation from probable random results are largely speculative and not relevant to establishing the type of disparity which would tend to show purposeful or negligent systematic exclusion of certain segments of the community (40 Cal.App.3d at p. 133).

It is also suggested that the defendant was prejudiced because persons of lower income in the Richmond area were more apt to evade service because of the distance and expense involved in getting to Martinez. Jurors are entitled to their fees and mileage if summoned whether they are sworn to try the case or not. (Pen. Code, § 1143; *Jackson* v. *Baehr* (1903) 138 Cal. 266, 268-269 [71 P. 167].) There is no showing that such failure to appear would follow any racial lines, nor can it be demonstrated that such absences are particular to certain economic classes. (See *People* v. *Goodspeed, supra,* 22 Cal.App.3d 690, 703.) No discrimination has been shown in either the selection of the jury, or in holding the trial of the defendant at the county seat instead of in Richmond.

The order admitting defendant to probation is affirmed.

Molinari, P. J., and Elkington, J., concurred.