[No. AO21123. First Dist., Div. One. Feb. 15, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES WALTER JONES, Defendant and Appellant.

**COUNSEL**

Georgia Ann Mitchell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Kristofer Jorstad and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—On a Contra Costa County jury's verdict defendant Jones, a black man, was found guilty of having taken a motor vehicle in violation of Vehicle Code section 10851. He appeals from the judgment which was entered on the jury's verdict.

The only issue of the appeal is stated by Jones as that: "Appellant was denied an impartial jury drawn from a fair cross-section of the community as guaranteed by article I, section 16, of the California Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."

The apposite law is clear.

The Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . . ."

California Constitution, article I, section 16: "Trial by jury is an inviolate right and shall be secured to all, . . ."

*Taylor* v. *Louisiana* (1974) 419 U.S. 522, 528 [42 L.Ed.2d 690, 697, 95 S.Ct. 692]: "[S]election of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial."

■ *People* v. *Wheeler* (1978) 22 Cal.3d 258, 272 [148 Cal.Rptr. 890, 583 P.2d 748]: "We . . . hold that in this state the right to trial by a jury drawn from a representative cross-section of the community is guaranteed equally and independently by the Sixth Amendment to the federal Constitution and by article I, section 16, of the California Constitution."

Code of Civil Procedure section 203: In "the selection of persons to be listed as available for service as trial jurors [the] persons so listed shall be fairly representative of the population in the area served by the court, and shall be selected upon a random basis."

In the selection of persons to serve on trial juries there are many, here unquestioned, relevant statutes. Among them are found requirements that the persons be at least 18 years of age, in possession of their natural faculties, and have a sufficient knowledge of the English language. (Code Civ. Proc., § 198.) They must not have been convicted of a felony. (Code Civ. Proc., § 199.) And when it is found that such "jury service would entail undue hardship" the persons shall be excused. (Code Civ. Proc., § 200.)

■ Jones challenged the panel of jurors called for his trial "for failure to represent a fair cross-section of the community." At a hearing on the motion it was established, as relevant to the appeal, that while black persons over the age of 18 years constituted 8.1 percent of Contra Costa County's total population of that age group, only 4.2 percent of the persons actually called for jury service were black.

Jones relies principally upon the opinion of this court published as *People* v. *Buford* (1982) 132 Cal.App.3d 288 [182 Cal.Rptr. 904].

In *Buford*, also arising in Contra Costa County, a similar contention was made. At Buford's trial it appeared that the county's black population was

approximately 7.3-7.8 percent of the total population, while but about 4.3 percent of the persons called for jury service were black.

In *Buford* we said: "We emphasize that we do not hold existing jury procedures in Contra Costa County to be invalid. It may be that the disparities demonstrated by appellant's statistical showing can be adequately explained on the basis of other, permissible, factors, or that certain of the procedures can be justified by considerations of practical necessity or other countervailing policies. We do not undertake to decide whether or to what extent the federal or state Constitutions may require a state or county to expend funds in order to eliminate or modify what may be pragmatic obstacles to minority representation on juries, such as the level of jury pay or the costs of transportation. . . . And we certainly do not suggest that a county should engage in race conscious selection procedures in order to assure representative juries. We hold only that upon a showing such as made by appellant in this case, the prosecution should have been required to come forward with available evidence of explanation and justification, so as to enable the court to determine whether the county is doing all that can reasonably be expected to achieve the constitutional goal. . . ." (132 Cal.App.3d at pp. 298-299.)

Following establishment of the above-noted disparity in the *Jones* case, and as commanded by *Buford,* the prosecutor came forward with "evidence of explanation and justification, so as to enable the court to determine whether the county is doing all that can reasonably be expected to achieve the constitutional goal." From such evidence the following appeared.

Contra Costa County endeavors to contact approximately 50,000 prospective jurors each year. Their names and addresses are randomly secured from voters registration lists, and from the Department of Motor Vehicles' records of automobile owners and drivers' licenses. (No other source is reasonably apparent; census records are confidential. See 13 U.S.C. § 9.) When the names are obtained there is no indication of the person's race. Each of the persons is furnished, by mail, with a juror "qualification affidavit" and an accompanying letter. Each is advised that the law requires his or her cooperation in filling out the affidavit under penalty of perjury. A properly filled out and returned affidavit determines the eligibility for jury service, and excuses, if any, therefrom. Approximately 40 percent of them establish ineligibility, a reason for deferment, or excuse from service for undue hardship.

No excuses from service are accepted over the telephone; they must be in writing. Excuses are ordinarily accepted from mothers who must care for young children, workers who would lose employment compensation during

jury service, and students attending school or college. And many medical excuses are allowed, but only on doctors' reports establishing disability. If a letter and affidavit sent a prospective juror are not responded to, a second letter and affidavit are sent demanding action. Many such communications are returned by the post office, and many simply go unanswered. There is no followup (for reasons of cost) when the second communication is unresponded to.

The names and addresses of qualified and unexcused persons are placed in a computer. Each week about 400 such names are *randomly* selected by the computer, and called for actual service. All withdrawals of names from the computer are random selections.

And throughout the entire process, until the prospective juror is called to a courtroom or juror assembly room, the system is calculated to give no indication of the person's race to the jury commissioner, his assistants, or other county employees.

We are of the opinion that the trial court, from the evidence before it, reasonably determined that Contra Costa County was "doing all that can reasonably be expected to achieve the constitutional goal." (See *People* v. *Buford, supra,* 132 Cal.App.3d 288, 298-299.)

Jones' appeal is accordingly found to be without merit.

Affirmed.

Newsom, J., concurred.

**RACANELLI, P. J.**—I concur in the result since the record before us demonstrates that the prosecution met its burden under *People* v. *Buford* (1982) 132 Cal.App.3d 288, 299 [182 Cal.Rptr. 904], justifying the statistical disparities reflected in the under-represented venire. I reserve judgment to a later day whether the County of Contra Costa is doing all that is realistically possible in order to remove any remaining vestiges of unrepresentative juries.

Appellant's petition for a hearing by the Supreme Court was denied April 18, 1984. Bird, C. J., was of the opinion that the petition should be granted.