[No. A018867. First Dist., Div. One. Sept. 28, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
RONALD E. BLACK, Defendant and Appellant.

## COUNSEL

Quin Denvir and Frank O. Bell, Jr., State Public Defenders, under appointment by the Court of Appeal, and Peter R. Silten, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Gloria F. DeHart and Ronald D. Smetana, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ELKINGTON, J.**—Defendant Ronald E. Black was found guilty in the Contra Costa County Superior Court of two charges of robbery, and burglary and assault with a deadly weapon, in the perpetration of each of which crimes he had *used* a deadly weapon. He was also found guilty by the jury of possession of a sawed-off shotgun. He had previously five times been convicted of robbery, and once for burglary, second degree.

Proof of Black's guilt of the charged offenses may reasonably be described as overwhelming.

Relying upon our decision in *People ·v. Buford* (1982) 132 Cal.App.3d 288 [182 Cal.Rptr. 904], defendant Black, a white man, contends only that he was denied "his constitutional right to a jury drawn from a fair cross-section of the community."

In *Buford* the defendant, a black man, had challenged the jury which later convicted him, "on the ground that blacks were underrepresented on that jury and on other juries of Contra Costa County, as a result of systematic

exclusion [of blacks] in the jury-selection process." He did *not* "question the constitutional validity of the means by which the master list was compiled"; his grievance concerned only the remaining "stage of the process, in which persons selected at random from the master list are disqualified or excused, or for some other reason do not appear in the final venire."

We recognized in *Buford,* as had *People* v. *Wheeler* (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748], before us, that: " '[E]xcessive excuses on such grounds as sex, age, job obligations, or inadequate jury fees, can upset the demographic balance of the venire in essential respects.' " We acknowledged that perhaps "the disparities demonstrated by appellant's statistical showing can be adequately explained on the basis of other, permissible, factors, or that certain of the procedures can be justified by considerations of practical necessity or other countervailing policies," and that there "may be pragmatic obstacles to minority representation on juries, such as the level of jury pay or the costs of transportation." We did *not* find the "existing jury procedures in Contra Costa County to be invalid." We held only that: "[I]n light of the substantial time which has elapsed since [Buford's] trial and the fact that he has completed his prison sentence as a result of the conviction, that reversal, rather than remand for additional proceedings, is the appropriate disposition."

In the case at bench, the People and Black stipulated that "the procedures in the summoning, excusing, and deferring of prospective jurors was the same as used in *People* v. *Buford.* "

Since, argues Black, "the underrepresentation of blacks was due to their systematic exclusion in the county's selection process," as in *Buford* his convictions must be set aside.

We did not make such a holding in *Buford,* and as noted, we did *not* find that case's jury selection process invalid, or constitutionally tainted, or error otherwise to have there occurred.

And although not essential to the conclusion we here reach, we noted in *People* v. *Jones* (1984) 151 Cal.App.3d 1029, 1032-1033 [199 Cal.Rptr. 185] (hg. den.) that Contra Costa County appears to have corrected *Buford's* suggested possible shortcomings, as follows: "When the names are obtained there is no indication of the person's race. Each of the persons is furnished, by mail, with a juror 'qualification affidavit' and an accompanying letter. Each is advised that the law requires his or her cooperation in filling out the affidavit under penalty of perjury. A properly filled out and returned affidavit determines the eligibility for jury service, and excuses, if any, therefrom. Approximately 40 percent of them establish ineligibility, a rea-

son for deferment, or excuse from service for undue hardship. No excuses from service are accepted over the telephone; they must be in writing. Excuses are ordinarily accepted from mothers who must care for young children, workers who would lose employment compensation during jury service, and students attending school or college. And many medical excuses are allowed, but only on doctors' reports establishing disability."

The judgment is affirmed.

Newsom, J., concurred.

**RACANELLI, P. J.,** Concurring.—Based upon the uncontroverted evidence submitted at the hearing on defendant's motion challenging the venire, the following appears: Blacks comprised 8.1 percent of the voter-eligible population; of the 225 prospective jurors in the jury pool for the week involved, 5 to 8 (2.2 to 3.56 percent) were black; of the 35 jurors actually summoned for defendant's trial, only 1 was black (2.86 percent). The parties stipulated that the procedures used by the jury commissioner in the summoning, excusing and deferring of prospective jurors were the same as reflected in *People* v. *Buford* (1982) 132 Cal.App.3d 288 [182 Cal.Rptr. 904]. However it was further shown that the number of prospective jurors excused and deferred (for a period up to 90 days) was considerably lower than that disclosed in *Buford*. Apart from the minor variance in the racial percentages of the summoned panels, the record is factually indistinguishable from that in *People* v. *Jones* (1984) 151 Cal.App.3d 1029 [199 Cal.Rptr. 185] (hg. den. Apr. 18, 1984) in which this court found no constitutional impediment. Accordingly, I concur in the result reached herein but again reiterate my reservation concerning the seemingly chronic appearance of unrepresentative criminal juries in Contra Costa County. (See *id.*, 151 Cal.App.3d at p. 1033.)

A petition for a rehearing was denied October 25, 1984, and appellant's petition for a hearing by the Supreme Court was denied November 21, 1984. Broussard, J., Reynoso, J., and Grodin, J., were of the opinion that the petition should be granted.