[No. A021994. First Dist., Div. One. Feb. 22, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MATTHEWS SIMMONS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Certified for partial publication pursuant to Cal. Rules of Court, rules 976(b), 976.1. This published opinion reflects the directions to the Reporter of Decisions designating what portions of the opinion are to be published.

**COUNSEL**

Thomas W. Perley, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Ann K. Jensen and Dane R. Gillette, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**RACANELLI, P. J.**—Defendant was convicted by a jury of first degree murder arising out of a shooting incident in a Richmond, California restaurant and sentenced to 25 years to life, enhanced by 2 years for use of a firearm. On appeal, defendant raises several claims of prejudicial error. For reasons which we explain, we find no reversible error and affirm the judgment below.

### I. *Denial of an Impartial Jury*

Defendant first argues he was denied his constitutional right to an impartial jury comprised of a fair cross section of the community as a result

of jury selection procedures which systematically excluded members of the black race.

Relying on our decision in *People* v. *Buford* (1982) 132 Cal.App.3d 288 [182 Cal.Rptr. 904], defendant challenged the jury venire summoned on the day of trial on the grounds of a systemic bias resulting in underrepresentation of black members of the community, particularly from the west part of Contra Costa County where the crime occurred. In support of his *Buford* motion, defendant submitted evidence—in addition to that in related proceedings[1]—that blacks comprised 4.6 percent of the summoned venire which appeared and 3.3 percent of the 60 prospective jurors in the assigned panel. Defendant contends that on a factual record "virtually indistinguishable" from that in *Buford,* the trial court erred in finding that the county was doing "all that can reasonably be expected to achieve the constitutional goal mandated in *Wheeler.*" (*Id.,* 132 Cal.App.3d at p. 299.)

However, subsequently reported decisions of this court have consistently upheld the county jury selection system and practices against similar constitutional attacks on factual records closely parallel, if not virtually identical, to *Buford.* (See *People* v. *Jones* (1984) 151 Cal.App.3d 1029 [199 Cal.Rptr. 185] [4.2 percent]; *People* v. *Black* (1984) 160 Cal.App.3d 480 [206 Cal.Rptr. 744] [2.2 to 3.56 percent, conc. opn. at p. 483]; *People* v. *Pervoe, supra,* 161 Cal.App.3d 342 [3.76 percent weekly average].) The majority in each of these decisions expressly or impliedly concluded that the prosecution had met its burden under *Buford* that the county was doing all that could "reasonably be expected" to comply with the constitutional mandate. (*People* v. *Jones, supra,* 151 Cal.App.3d at p. 1033; *People* v. *Black, supra,* 160 Cal.App.3d at p. 482; *People* v. *Pervoe, supra,* 161 Cal.App.3d at p. 354.)

Yet, the jury commissioner testified that, except for refinements in the excusal and deferral process, the jury selection procedures remained "essentially the same" as described in *Buford;* that although one "follow-up" is attempted where a prospective juror fails to respond to a jury summons (8.9 percent), no procedures exist to ameliorate or reduce the significant level of attrition reflected in the initial qualifying phase (26 percent). Nor is there any indication that county authorities ever invoke or implement the statutory remedies designed to compel juror compliance. (See Code Civ.

---

[1]The parties stipulated to the admission of the evidentiary records in People v. Brown et al. (Super. Ct. No. 26410) and People v. Gilbert (Super. Ct. No. 26065). For purposes of discussion, it is sufficient to observe that the demographic evidence, selection procedures and methodology employed are substantially similar to that considered in *People* v. *Pervoe* (1984) 161 Cal.App.3d 342, 351-352 [207 Cal.Rptr. 622] (including the 8.1 percent racial composition of the eligible adult county population based upon 1980 census data).

Proc., §§ 204.3, subd. (b) [summoning person to complete juror questionnaire], 225 [resummoning trial juror], 238 [attachment and fine for trial juror's failure to appear].)

■ While the sanctions provided arguably are severe, still they reflect an implicit determination of "the nature of the evil the Legislature sought to avoid when it authorized their use." (*People* v. *Pervoe, supra,* 161 Cal.App.3d at p. 362 (dis. opn. of Kline, P. J.).) Moreover, notwithstanding the remedial changes in excusal and deferral practices (but see § 4.5, Standards of Jud. Admin., Appen. Div. I to Cal. Rules of Court, effective Jan. 1, 1985), underrepresentation of blacks continues with remarkable consistency and without plausible explanation. The net result of such unexplained recurrence is to shift the burden unjustly to the defendant to show what more can possibly be done to remove the pernicious effect of chronic underrepresentation in Contra Costa County criminal juries.[2] (See *Duren* v. *Missouri* (1979) 439 U.S. 357, 364 [58 L.Ed.2d 579, 586, 99 S.Ct. 664].)

■ Nonetheless, all of the reported decisions have rejected similar *Buford* challenges on virtually indistinguishable factual showings. Petitions for hearing having been uniformly denied, those decisions have since become final. Therefore, considerations of finality and precedential probity impel, albeit reluctantly, a similar determination herein on the analogous record presented.

### Disposition

In view of our determination that none of defendant's claims possess merit, we affirm the judgment.

Elkington, J., concurred in the result.

**NEWSOM, J.**—I concur in the result and in the lead opinion in all respects save one: I express no view concerning the correctness of the statement that

---

[2]It appears that all of the cases discussed arise from offenses committed within the jurisdictional boundaries of the Bay Judicial District, a district embracing the City of Richmond with a population of 75,000 people reflecting a predominantly high proportion of black residents. A division of the Contra Costa County Superior Court, which consists of 15 judges (Gov. Code, § 69582) holds regular sessions within that district. However, it is unclear whether, and to what extent, criminal trials could be held within that district (Gov. Code, § 69740 et seq.). Although not free of conjecture, it is at least arguable that "local" jury trials might substantially reduce the existing disparity due to the prevailing disproportionate jury composition. (See *People* v. *Spears* (1975) 48 Cal.App.3d 397, 399-400 [22 Cal.Rptr. 93] [where similar argument raised but undecided].)

the underrepresentation of blacks on Contra Costa County juries is ". . . without plausible explanation."

A petition for a rehearing was denied March 13, 1985, and appellant's petition for a hearing by the Supreme Court was denied April 18, 1985. Bird, C. J., Broussard, J., and Grodin, J., were of the opinion that the petition should be granted.