[No. A061865. First Dist., Div. Two. Aug. 9, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY DE ROSANS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant rules 976 and 976.1, California Rules of Court, this opinion is certified for publication except for parts II, III and IV.

COUNSEL

Victor Blumenkrantz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Deputy Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Peggy S. Ruffra, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

KLINE, P. J.—

*Introduction*

Henry De Rosans (appellant) appeals from a conviction of second degree robbery and three related offenses. His principal contention is that the trial court erred in denying his challenge to the jury panel as unrepresentative of the community and in also denying his motion for a continuance for the purpose of complying with the procedural requirements for the challenge.

We shall hold that the trial court correctly denied both the challenge and the motion for a continuance. Appellant failed to make a prima facie showing of a violation of his right to a jury drawn from a fair cross-section of the community. Because appellant had ample time to make the challenge prior to trial, the court did not abuse its discretion in denying him a continuance to perfect the challenge.

Appellant also contends the trial court should have granted his motion to exclude evidence of certain prior convictions so that the prosecution could not use them to impeach him if he testified. Appellant waived this issue by not testifying. Appellant's objection to the court's imposition of a restitution fine without a finding of his ability to pay is also waived, since he did not raise it at sentencing. Finally, appellant's constitutional challenge to the trial court's jury instruction defining "reasonable doubt" is foreclosed by a recent decision of the United States Supreme Court.

*Statement of the Case*

Appellant was charged with second degree robbery (Pen. Code, § 212.5, subd. (b)), attempted second degree robbery (Pen. Code, §§ 664, 212.5, subd. (b)), possession of drug paraphernalia (Health & Saf. Code, § 11364), and carrying a switchblade knife (Pen. Code, § 653k). The information further alleged that appellant used a deadly weapon in the commission of the robbery and attempted robbery (Pen. Code, § 12022, subd. (b)) and that he had three prior felony convictions.

Appellant pleaded guilty to the drug paraphernalia charge and admitted the prior convictions. The jury found him guilty on the three remaining counts and found true the allegations that he used a weapon. We set out further procedural facts as needed in the discussion.

*Statement of Facts*

The principal factual issue at trial was the victims' identification of appellant as the man who robbed them. Only the victims, Roshan Khan and Mark Davies, and the arresting officer testified. It was undisputed that as Khan and Davies were walking on Haight Street in San Francisco about 11:30 p.m. on September 21, 1992, Khan tripped and fell to the ground. A man approached and crouched in front of her. As she stood, the man grabbed her purse. She tried to retrieve it but failed. Davies stepped between them. The man demanded Davies's wallet, and both Khan and Davies saw a shiny metal object in his hand. Khan and Davies walked away and called the police from a phone booth. The police came and searched the neighborhood, but could not find the man Khan and Davies described.

The next day, Khan returned to the area to look for her purse. She saw appellant on the street and recognized him by his clothes and hair as the robber. She called the police, who arrived and detained appellant. Khan identified appellant and also identified a knife the police found in appellant's possession as "very similar" to the metal object she had seen the night before.

At trial, both Khan and Davies identified the clothing appellant was wearing when he was arrested as that of the man who robbed them.

DISCUSSION

I.

*The Trial Court Did Not Abuse Its Discretion in Denying the Challenge to the Panel and the Motion for Continuance*

 ▪▪ Voir dire began on the morning of April 21, 1993. After the jury panel[1] had left for the lunch recess, appellant moved to strike the panel on the ground it did not represent a cross-section of the community. Pointing out that his client was African-American, defense counsel stated that he believed members of that racial group were underrepresented on the 60-person panel. Counsel referred to testimony of the San Francisco jury commissioner in a previous case, which he did not name, regarding the procedure for selecting prospective jurors. The trial judge agreed to allow defense counsel to present authority for this challenge after the lunch recess.

Voir dire resumed following a recess of an hour and a half. After selection of the jury, defense counsel presented his motion to the trial judge in chambers. As authority for his challenge to the panel, he cited the Sixth Amendment to the United States Constitution, *Taylor* v. *Louisiana* (1975) 419 U.S. 522 [42 L.Ed.2d 690, 95 S.Ct. 692], *People* v. *Harris, supra,* 36 Cal.3d 36, and Code of Civil Procedure section 225 (hereafter section 225). Defense counsel again emphasized that the jury panel was "racially unrepresentative of the community."

Defense counsel also moved for a continuance to allow him to comply with the procedure set out in section 225, which requires that a challenge to the jury panel be made in writing and served on the parties and the jury commissioner. He stated that his written challenge would show that African-Americans are a cognizable group, that this group was "under-represented in

---

[1]The terms "panel" and "venire" are sometimes used interchangeably (see Black's Law Dict. (6th ed. 1990) p. 857, col. 1 [jury panel], p. 1556, col. 1 [venire]).

Code of Civil Procedure section 194 defines "juror pool" as "the group of prospective qualified jurors appearing for assignment to trial jury panels" (subd. (e)) and "trial jury panel" as the "group of prospective jurors assigned to a courtroom for the purpose of voir dire" (subd. (q)).

We follow the usage of the California Supreme Court in *People* v. *Breaux* (1991) 1 Cal.4th 281 [3 Cal.Rptr.2d 81, 821 P.2d 585]: the "master list" is the compilation of eligible jurors, the "venire" is the group of prospective jurors summoned from the master list, and the "panel" is the group of jurors from the venire assigned to a court for selection of the trial jury. (*Breaux, supra,* 1 Cal.4th at p. 296, fn. 2.)

The case law refers to the motion at issue here as a "motion to quash the venire" (see, e.g., *People* v. *Harris* (1984) 36 Cal.3d 36, 45 [201 Cal.Rptr. 782, 679 P.2d 433]) or a "challenge to the panel" or "challenge to the venire" (see, e.g., *People* v. *Breaux, supra,* 1 Cal.4th at p. 299 ["challenge to the jury venire"]). "Challenge to the jury panel" is consistent with Code of Civil Procedure section 225, subdivision (a).

this panel," and that this underrepresentation was systematic. In arguing for the continuance, he asserted that he had had "no way to anticipate this was coming up before we saw this panel in the courtroom this morning."

Relying on *People* v. *Spears* (1975) 48 Cal.App.3d 397 [122 Cal.Rptr. 93], the trial court denied the challenge on its merits. Denying the motion for a continuance, the judge stated that "[i]t would be unrealistic and unwieldy to at this point, to recess the trial and go through procedures dealing with any evidence in connection with the method of selection of potential jurors." However, the judge stated that appellant could still file the written challenge required by section 225 and the court would deem it made at the time of the oral challenge. Appellant never filed a written challenge. Following the denial of these motions, trial resumed and the jurors were sworn.

Appellant contends that the court erred in denying his challenge to the panel and motion for continuance. We disagree.

Section 225, subdivision (a), makes the following provision for a challenge to a jury panel for cause: "(1) A challenge to the panel may only be taken before a trial jury is sworn. The challenge shall be reduced to writing, and shall plainly and distinctly state the facts constituting the ground of challenge. (2) Reasonable notice of the challenge to the jury panel shall be given to all parties and to the jury commissioner, by service of a copy thereof. (3) The jury commissioner shall be permitted the services of legal counsel in connection with challenges to the jury panel."[2]

---

[2] Section 225 was enacted in 1988 as part of the Trial Jury Selection and Management Act. It replaced Penal Code sections 1058 through 1064, which set out substantially the same procedure for a challenge to the panel but did not contain a provision for legal counsel to the jury commissioner. In addition, former Penal Code section 1059 required that "[a] challenge to the panel can be founded only on a material departure from the forms prescribed in respect to the drawing and return of the jury in civil actions, or on the intentional omission of the sheriff, marshal, constable, or other officer, to summon one or more of the jurors drawn." This provision was not incorporated into the Trial Jury Selection and Management Act.

Despite the limitation of Penal Code section 1059, section 1058 did provide the statutory basis for some constitutional challenges to jury panels prior to 1988. (See *People* v. *Carter* (1961) 56 Cal.2d 549, 568-569 [15 Cal.Rptr. 645, 364 P.2d 477] [while fair cross-section claim "is not literally made a ground of challenge to the panel by statute," challenge to panel was appropriate method of raising claim]). Other cases considered constitutional challenges to the jury panel without referring to any statutory authority for such a challenge. (See *People* v. *Harris, supra*, 36 Cal.3d at p. 45.)

Similarly, from 1988 to the present, only a few reported cases, of the many dealing with challenges to the panel, have discussed section 225, subdivision (a). All cited it to show that a challenge to the jury panel was waived when it was not raised in the trial court at all. (See, e.g., *People* v. *Fauber* (1992) 2 Cal.4th 792, 816 [9 Cal.Rptr.2d 24, 831 P.2d 249]; *People* v. *Howard* (1992) 1 Cal.4th 1132, 1159 [5 Cal.Rptr.2d 268, 824 P.2d 1315].) Again, numerous cases have considered challenges to the jury panel during this time without referring to

## A. *Prima Facie Showing of Fair Cross-section Violation*

■ The right to a jury drawn from a fair cross-section of the community is guaranteed by the Sixth Amendment to the United States Constitution and article I, section 16 of the California Constitution. In deciding a claim of a fair cross-section violation, the federal and state jury-trial guarantees are coextensive and the analysis is identical. (*People* v. *Bell, supra*, 49 Cal.3d at p. 525, fn. 10.)

■ *Duren* v. *Missouri* (1979) 439 U.S. 357 [58 L.Ed.2d 579, 99 S.Ct. 664] established three requirements for a prima facie showing of a violation of the fair cross-section requirement. (*People* v. *Harris, supra*, 36 Cal.3d at p. 50.) "[T]he defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." (*Duren, supra*, 439 U.S. at p. 364 [58 L.Ed.2d at p. 587].)

The third *Duren* factor does not require a showing of intentional or purposeful discrimination. (*People* v. *Harris, supra*, 36 Cal.3d at p. 58.) However, when criteria for selecting prospective jurors are neutral with respect to race, ethnicity, sex, and religion, the third prong of the test requires that the defendant show the criteria are applied in a manner that is the probable cause of the disparity in representation and is constitutionally impermissible. (*People* v. *Bell, supra*, 49 Cal.3d at p. 524.)

■ Contrary to appellant's contention in this case, a defendant does not establish the underrepresentation requirement by showing a disparity on the particular jury panel assigned to the court in which his or her jury is to be selected. Underrepresentation on the defendant's particular panel is not relevant. (*People* v. *Bell, supra*, 49 Cal.3d at p. 525.) The trial court did not abuse its discretion in denying, on the merits, appellant's challenge to the jury panel. Furthermore, appellant failed to make a written motion as required by section 225, even though the trial court offered to deem such a motion timely filed.

---

statutory authority for the challenge. (See, e.g., *People* v. *Bell* (1989) 49 Cal.3d 502, 520-521 [262 Cal.Rptr. 1, 778 P.2d 129].)

Under Penal Code section 1060, the requirement that the challenge be made before the jury is sworn was held to refer to the swearing of a juror to try the case after voir dire, not to the swearing of a juror before voir dire. (*People* v. *Myers* (1987) 43 Cal.3d 250, 262-263 [233 Cal.Rptr. 264, 729 P.2d 698].)

Appellant's oral motion met the first element of the *Duren* analysis but not the second or third. It is clear that African-Americans are a cognizable group for fair cross-section analysis. (*People* v. *Harris, supra*, 36 Cal.3d at p. 51.)

In contrast to the present case, evidence supporting the second prong of a fair cross-section claim typically includes census data and studies of the composition of jury venires, usually over several months, in the judicial district in which the defendant is to be tried. (See, e.g., *People* v. *Harris, supra*, 36 Cal.3d at p. 46 [three-month survey of jury venires appearing at Long Beach courthouse]; *People* v. *Bell, supra*, 49 Cal.3d at p. 524 [six-month survey]; *People* v. *Breaux, supra*, 1 Cal.4th at p. 296 [four-and-a-half-month survey].) In *People* v. *Morales* (1989) 48 Cal.3d 527 [257 Cal.Rptr. 64, 770 P.2d 244], evidence of the number of Spanish-surnamed persons in two consecutive jury venires totaling seven hundred and eighty-eight persons represented a sample "too small in size, and too short in duration" to make a prima facie showing of underrepresentation. (*Morales, supra*, 48 Cal.3d at pp. 542, 548.) The trial court in the present case did not err in denying a motion based on counsel's impression of the composition of a panel of 60 persons.

Evidence supporting the third element of a fair cross-section claim typically includes testimony from the jury commissioner describing the process for calling and excusing jurors and composing panels. (See, e.g., *People* v. *Henderson* (1990) 225 Cal.App.3d 1129, 1148 [275 Cal.Rptr. 837], disapproved on another point in *People* v. *Davis* (1994) 7 Cal.4th 797, 807 [30 Cal.Rptr.2d 50, 872 P.2d 591] [San Francisco jury selection procedure]; *People* v. *Harris, supra*, 36 Cal.3d at p. 46 [Los Angeles County].) Again, the trial court in the present case did not err in denying the challenge when it was based only on counsel's impression of San Francisco panels in general and unsupported recollection of testimony by the jury commissioner. Appellant failed to make a prima facie showing of a fair cross-section violation in support of his challenge to the jury panel and the trial court correctly denied the challenge on the merits.[3]

B. *Denial of Motion for Continuance*

■ This court has held that continuances should be granted sparingly and only on a showing of good cause. (*In re Marriage of Hoffmeister* (1984)

---

[3]We note that in some cases defendants have eased the weight of this evidentiary burden by filing joint challenges or by relying on the record of testimony in recent hearings on challenges to the panel in the same judicial district. (See *People* v. *Henderson, supra*, 225 Cal.App.3d at p. 1148 [joint challenge by five defendants in separate cases]; *People* v. *Myers, supra*, 43 Cal.3d at p. 261 [defendant relied almost entirely on studies, briefs, and order from another challenge in same judicial district]; *People* v. *Sanders* (1990) 51 Cal.3d 471, 489 [273 Cal.Rptr. 537, 797 P.2d 561] [defendant relied on expert testimony presented in three other recent cases in superior court of same county].)

161 Cal.App.3d 1163, 1169 [208 Cal.Rptr. 345].) The trial judge "must exercise his discretion with due regard to all interests involved, and the refusal of a continuance which has the practical effect of denying the applicant a fair hearing is reversible error." (*Hoffmeister, supra,* 161 Cal.App.3d at p. 1169.) ▆ In the present case, the refusal of a continuance did not deny appellant a fair hearing because he had ample time before trial in which to make the challenge to the panel.

Appellant insists that it was not possible to make the challenge to the panel prior to the morning that voir dire began because counsel had to see the panel in order to make the challenge. He further contends that the writing requirement of section 225, subdivision (a), necessitated a continuance so that having observed the panel, counsel could properly make the challenge.

This contention appears to be a novel one. We have found no cases dealing with the grant or denial of a continuance for the purpose of preparing a challenge to the jury panel. A survey of the cases indicates that a challenge on fair cross-section grounds usually is made as a pretrial motion before any panel is assigned to the court that will try the defendant. (See, e.g., *People* v. *Morales, supra,* 48 Cal.3d at p. 542; *People* v. *Sanders, supra,* 51 Cal.3d at p. 489.)[4]

Based on the nature of fair cross-section analysis and on the substantive and procedural requirements for a challenge to the panel, we hold that the

---

[4]An exception to the general pattern of pretrial fair cross-section challenges is *People* v. *Myers, supra,* 43 Cal.3d at page 261. In that case, the court held that a fair cross-section challenge made 10 days into voir dire was timely. However, that case did not involve a continuance to make the challenge. Rather, the defendant presented in support of his challenge the record and order in another challenge decided just three days before in the same judicial district. The trial court denied the challenge on the merits. (*Myers, supra,* 43 Cal.3d at p. 261; see also *People* v. *Bell, supra,* 49 Cal.3d at p. 521 [motion denied without prejudice on second day of trial, hearing on renewed motion after jury selected; no discussion of timeliness]; *People* v. *Henderson, supra,* 225 Cal.App.3d at pp. 1146, 1151-1152 [pretrial challenge denied; renewed challenge to particular panel, made at voir dire, was based on insufficient showing; no discussion of timeliness].)

While it found the challenge timely under Penal Code former section 1060 (see fn. 2, *ante*), the *Myers* court observed that "[i]t might well be reasonable—as a matter of policy—to require a defendant to interpose any challenge to a jury panel before the voir dire examination of individual jurors begins." (*People* v. *Myers, supra,* 43 Cal.3d at p. 262.) The reason for allowing a challenge up to the point the jury is sworn may lie in the past statutory limitation of the challenge to cases of departure from the statutory procedure for composing the panel. (See, fn. 2, *ante*.) In such a case, the departure from procedure might not become known until the trial began. A challenge at trial is also appropriate in a case where the defendant claims the entire jury panel has been tainted by statements made by a prospective juror during voir dire. (See, e.g., *People* v. *Nguyen* (1994) 23 Cal.App.4th 32, 41 [28 Cal.Rptr.2d 140].)

We distinguish a challenge on fair cross-section grounds from these situations. The purpose of and requirements for a challenge to the panel on these grounds clearly direct a pretrial challenge, except in an unusual case such as *Myers* where new information regarding the selection of potential jurors becomes available during voir dire.

trial court did not err in denying appellant's motion for a continuance to prepare the challenge. The fair cross-section requirement itself, as well as *Duren* and section 225, clearly contemplates a pretrial challenge.

Appellant's argument that the trial court should have granted a continuance rests on an erroneous assessment of the nature of a fair cross-section claim. He is not entitled to a panel that represents a cross-section of the community. Rather, he is entitled to a panel *drawn from* a representative cross-section of the community. Thus, a challenge to the jury panel is always necessarily a challenge not to the composition of the panel but to the procedure by which the panel is composed. Indeed, the actual composition of the jury panel in a defendant's case is irrelevant to a challenge to the jury panel. (*People* v. *Bell, supra,* 49 Cal.3d at p. 525.)

"[A] party is constitutionally entitled to a petit jury that is as near an approximation of the ideal cross-section as the process of random draw permits. Obviously he cannot avoid the effect of that process: the master list must be reduced to a manageable venire, and that venire must in turn be reduced to a 12-person jury. The best the law can do to accomplish those steps with the least risk to the representative nature of the jury pool is to take them by random means . . . . We recognize that in a predictable percentage of cases the result will be a wholly unbalanced jury . . . . This is inevitable, the price we must pay for juries of a workable size." (*People* v. *Wheeler* (1978) 22 Cal.3d 258, 277 [148 Cal.Rptr. 890, 583 P.2d 748].) Thus, nothing in the nature or purpose of a fair cross-section claim required appellant to wait to make his challenge until voir dire began.

The *Duren* elements of a prima facie showing of a fair cross-section violation are consistent with this understanding. The second *Duren* prong requires a showing that the cognizable group is underrepresented in *venires* from which *juries* are selected, not on the panel from which the defendant's jury is selected.[5] The third *Duren* prong requires a showing that the system for selecting prospective jurors causes this underrepresentation; whether underrepresentation on the defendant's particular panel or panels resulted is incidental. The evidence required for the prima facie showing is therefore entirely available before voir dire begins.

The requirements of section 225, subdivision (a), are consistent with the nature of a fair cross-section challenge. The requirement of a written motion, served on the parties and the jury commissioner, and stating the facts on which the challenge is based, clearly contemplates a challenge based on

---

[5]We emphasize the plural here, not the use of the term "venire" as opposed to "panel," since, as we have noted, usage varies.

information that in most cases is available well before the panel appears for voir dire.

The record in this case shows that appellant's trial counsel was appointed February 25, 1993. The court heard *in limine* motions on April 20 and the trial began on April 21. Appellant thus had almost two months in which to prepare and file a challenge to the jury panel. The trial court did not abuse its discretion in denying appellant's motion for a continuance to make such a challenge once the trial had commenced.

II.-IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

For the foregoing reasons, the judgment is affirmed.

Smith, J., and Phelan, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 16, 1994.

---

*See footnote, *ante,* page 611.