Filed 4/4/24  P. v. Walker CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LEE QUEUON WALKER,<br><br>    Defendant and Appellant. | G062814<br><br>(Super. Ct. No. 22WF3313)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2023, a jury found defendant Lee Queuon Walker guilty of one count of murder (Pen. Code, § 187, subd. (a); count 1)[1] and five counts of attempted murder (§§ 187, subd. (a), 664, subd. (a); counts 2-6). The jury also found true sentencing enhancement allegations that Walker personally used a firearm causing great bodily injury or death in violation of section 12022.53, subdivision (d) (in connection with counts 1-5) and discharged a firearm in violation of section 12022.53, subdivision (c) (in connection with count 6). The same day, the trial court found Walker had two prior convictions for serious felonies for purposes of sections 667, subdivision (a)(1) and 1192.7.

On count 1, Walker was sentenced to a term of 75 years to life plus 25 years to life on the associated firearm enhancement and 10 years for the two serious felony priors. On counts 2-5, Walker was sentenced, on each count, to a term of 40 years to life plus 25 years to life for the associated firearm enhancement and 10 years for the two serious felony priors. On count 6, Walker was sentenced to a term of 40 years to life plus 20 years for the associated firearm enhancement and 10 years for the serious felony priors. The trial court ordered all terms to run consecutively except the sentence of 40 years to life on count 6, which it ordered to run concurrently. In total, Walker was sentenced to a 50-year determinate term followed by 360 years to life.

This court appointed counsel to represent Walker on appeal. Pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), appointed counsel filed a brief setting forth the facts of the case. Without arguing against his client, counsel stated he was not able to identify any arguable issues on appeal and asked us to conduct an independent review of the entire record. Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), appointed counsel identified several potential issues to assist us in conducting our independent review. Walker was provided 30 days to file a supplemental brief and he

---

[1] All further statutory references are to the Penal Code.

2

did so, suggesting a number of grounds for reversal, including (among others) ineffective assistance of counsel by both his trial and appellate counsel.

After fully examining the briefs and the entire record, and considering each of the issues suggested both by Walker and his counsel, we find no reasonably arguable issue on appeal.  We affirm.

FACTS

On November 24, 2022, after eating Thanksgiving dinner with family, Walker, his girlfriend, and their three-year-old son headed to the beach in their truck, with Walker driving.  Their son wanted to eat at a fast-food restaurant, so Walker drove to three different fast-food restaurants.  Each was closed.  As he was exiting the third restaurant parking lot, a tan truck pulled around Walker's truck.  Walker thought the tan truck hit his truck as it passed.[2]  Walker yelled, "These mother fuckers just hit my truck" and grabbed a gun from the center console of his truck.  Walker's girlfriend pleaded with him to put the gun away and drive home.  He did not listen.

Instead, Walker followed the tan truck he thought had hit him.  When the tan truck stopped at a light, Walker got out of his truck and knocked on the driver's window of the tan truck.  The tan truck kept its window up and drove on when the light changed.  Walker returned to his truck and continued his pursuit.  His girlfriend continued to plead with Walker to just drive home.  Both trucks were driving slowly, and the tan truck was making no attempt to escape Walker's pursuit.

There were six men in the tan truck:  Lucas Rivera-Velasco, Bernardo M., Gilberto M., Hugo M., Jaime N., and Salvador P.  Eventually, the tan truck pulled over to drop one of the men off at his apartment.  Walker stopped his truck in the middle of the street and, with his gun in hand, got out of his truck.  What happened next was recorded by two surveillance video cameras on nearby businesses.  Walker ran toward the driver's

---

[2]  Later examination of Walker's truck did not show damage consistent with a collision.

window of the tan truck. Rivera-Velasco got out of the passenger side of the tan truck and moved towards Walker. Someone shouted, "What the fuck?" and Walker raised his gun and fired twice, hitting Rivera-Velasco in the groin. Walker then walked to the open passenger door of the truck and fired five shots into the truck. He turned and walked back to his truck, stopping on the way to shoot Rivera-Velasco, who was bent over next to the tan truck, in the face. Walker got in his truck and drove away.

Rivera-Velasco died of his injuries. One man, who had exited the tan truck by the time of the shooting, was not shot but sustained injuries from shattered glass. The four men who remained in the truck during the shooting suffered gunshot injuries of varying severity. Walker's girlfriend testified she never saw weapons on any of the men from the tan truck, and she never felt threatened by anything any of the men from the tan truck did or said.

Walker then drove his girlfriend and their son to her parents' house. When they arrived, Walker went into the house and told his girlfriend's father he had "fucked up." The father advised Walker to turn himself in. After driving to his brother's house, Walker went to a Costa Mesa police station and admitted he had fired the shots.

At trial, Walker testified he shot the men in defense of himself and his family. He claimed his only purpose in getting out of his truck holding a loaded gun was to exchange insurance information about the accident, but the passenger got "too close," so he fired.

DISCUSSION

Appointed appellate counsel declined to argue any specific issue on Walker's behalf, but suggested seven issues we might consider in our independent review of the record: (1) whether the prosecutor committed prejudicial misconduct by misstating the law of imperfect self-defense during closing argument; (2) whether the trial court committed prejudicial error by not excusing a juror who was seen dozing off at least once; (3) whether the trial court committed prejudicial error in denying Walker's request

4

to represent himself; (4) whether there were errors in the jury selection process; (5) whether the determinate sentence of 50 years followed by 360 years to life constitutes cruel and unusual punishment; (6) whether the trial court committed prejudicial error by denying Walker's Code of Civil Procedure section 170.6 motion to disqualify the trial judge; (7) whether the trial court committed prejudicial error by denying Walker's request that CALCRIM No. 371 be redacted and overruling his objection to CALCRIM No. 372; and (8) whether the verdict was supported by sufficient evidence. We address each below.

Because Walker claimed defense of self and others, the jury was instructed on, among other things, imperfect self-defense. The trial court instructed the jury under CALCRIM No. 571 that a killing that otherwise would be murder is reduced to voluntary manslaughter if Walker actually believed he, his girlfriend, or their son were in imminent danger of being killed or suffering great bodily injury, and he actually believed immediate use of deadly force was necessary to defend against the danger, but at least one of those beliefs was unreasonable.[3] During closing argument, the prosecutor twice misstated the applicable law by stating that if both beliefs were unreasonable, Walker could not establish imperfect self-defense. The prosecutor's comments did not create an arguable issue, however, because the court properly instructed the jury on imperfect self-

---

[3] CALCRIM No. 571 states: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed a person because he acted in imperfect self-defense or imperfect defense of another. [¶] If you conclude the defendant acted in complete self-defense or defense of another, his action was lawful and you must find him not guilty of any crime. The difference between complete self-defense or defense of another and imperfect self-defense or imperfect defense of another depends on whether the defendant's belief in the need to use deadly force was reasonable. [¶] The defendant acted in imperfect self-defense or imperfect defense of another if: [¶] 1. The defendant actually believed that he or [his] girlfriend and son was in imminent danger of being killed or suffering great bodily injury; [¶] AND [¶] 2. The defendant actually believed that the immediate use of deadly force was necessary to defend against the danger; [¶] BUT [¶] 3. At least one of those beliefs was unreasonable."

defense and also instructed the jury that it must abide by the court's instructions if counsel's "comments on the law conflict" with the court's instructions. (CALCRIM No. 200.) "When argument runs counter to instructions given a jury, we will ordinarily conclude that the jury followed the latter and disregarded the former, for 'we presume that jurors treat the court's instructions as a statement of law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.'" (*People v. Osband* (1996) 13 Cal.4th 622, 717.)

Walker asked the trial court to dismiss a juror who was seen dozing at least once during trial. When questioned by the court, however, the juror stated he had been listening and did not believe he had missed any testimony. The trial court has broad discretion to retain or discharge jurors. (*People v. Bonilla* (2007) 41 Cal.4th 313, 351–353 [no abuse of discretion where court did not discharge juror who admitting to nodding off but stated he did not miss any testimony].) The court's exercise of discretion in retaining the juror did not create an arguable issue on appeal.

No arguable issue was created by the trial court's denial of Walker's request to represent himself because Walker refused to waive his right to counsel, a necessary prerequisite to self-representation. (*People v. Hall* (1990) 218 Cal.App.3d 1102, 1105 ["a knowing and intelligent waiver of the right to counsel is required before the criminal defendant is permitted to represent himself or herself"].)[4]

No arguable issue arose in the jury selection process. After the jury was selected and sworn (and nine witnesses had testified), Walker objected that there were no "Moors on the jury or African-American[s]." He did not object on the ground that any potential juror had been excused for an improper reason.[5] His objection was to the racial makeup of the jury panel. "[A] challenge to the jury panel is always necessarily a

---

[4] This addresses the argument in Walker's supplemental brief that the trial court erred by not permitting him to represent himself at trial.

[5] See *People v. Wheeler* (1978) 22 Cal.3d 258; *Batson v. Kentucky* (1986) 476 U.S. 79.

6

challenge not to the composition of the panel but to the procedure by which the panel is composed." (*People v. De Rosans* (1994) 27 Cal.App.4th 611, 621.)  Such challenges must be made in writing before the jury is sworn, and notice must be given to the jury commissioner.  (Code Civ. Proc., § 225, subd. (a).)  Walker's objection did not satisfy any of those requirements.

Walker's supplemental brief again raises the absence of any "African American/Moorish American" juror.  Walker appears to suggest this may have violated the California Racial Justice Act of 2020.  (Stats. 2020, ch. 317, § 1 (Racial Justice Act).)  The Racial Justice Act (Pen. Code, § 745) was enacted "to eliminate racial bias from California's criminal justice system" and "to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing."  (Stats. 2020, ch. 317, § 2, subd. (i).)  It identifies four types of conduct that may violate the act: (1) a display of bias or animus toward the defendant based on race, ethnicity, or national origin by someone involved in the case; (2) use of discriminatory language or a display of bias during trial based on race, ethnicity, or national origin; (3) disparity in charging or conviction practices for persons who share the defendant's race, ethnicity, or national origin; and (4) disparity in sentencing practices for people who share the defendant's race, ethnicity, or national origin.  (Pen. Code, § 745, subd. (a).)  To the extent the argument in Walker's supplemental brief is a challenge to the jury panel, it fails for the reasons set forth above.  To the extent Walker's reference to the Racial Justice Act was directed to anything other than the jury panel's configuration, our independent review of the entire record did not identify any arguable issue regarding any possible violation of the Racial Justice Act.

Walker's sentence of 50 years followed by 360 years to life does not raise an arguable issue.  Whether a punishment is cruel or unusual is a question of law but "the underlying disputed facts must be viewed in the light most favorable to the judgment." (*People v. Martinez* (1999) 76 Cal.App.4th 489, 496.)  The instances in which a noncapital sentence constitutes cruel *and* unusual punishment in violation of the Eighth

7

Amendment to the United States Constitution or cruel *or* unusual punishment in violation of article 1, section 17 of the California Constitution are "'exceedingly rare'" and occur only in "'extreme'" cases. (*Lockyer v. Andrade* (2003) 538 U.S. 63, 73; *People v. Christensen* (2014) 229 Cal.App.4th 781, 805.) This is not one of those cases. Walker's sentence is not "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.)

The remaining issues identified by counsel pursuant to *Anders* create no arguable issue. The trial court denied Walker's Code of Civil Procedure section 170.6 motion because it was untimely and not properly supported. The matter was assigned to the trial judge for all purposes on February 9, 2023, and Walker made the motion on April 6, 2023. A Code of Civil Procedure section 170.6 challenge must be made "within 10 days after notice of the all purpose assignment . . . ." (*Id.*, subd. (a)(2).) Further, Walker refused to submit a declaration or give sworn testimony under oath to support the motion. (*Ibid.* [motion to disqualify must establish the claimed prejudice by oral or written motion "supported by affidavit or declaration under penalty of perjury, or an oral statement under oath, that the judge . . . before whom the action or proceeding is pending, or to whom it is assigned, is prejudiced against a party or attorney, or the interest of the party or attorney, so that the party or attorney cannot, or believes that he or she cannot, have a fair and impartial trial or hearing"].) The record supports the court's reasons for denying the motion. Given Walker's failure to comply with the statute, the denial of the motion does not raise an arguable issue.

Nor is any arguable issue created by the trial court's denial of Walker's request to redact a portion of CALCRIM No. 371. The full instruction reads: "If the defendant tried to hide evidence or discourage someone from testifying against him, that conduct may show that he was aware of his guilt. If you conclude that the defendant made such an attempt, it is up to you to decide its meaning and importance. However,

evidence of such an attempt cannot prove guilt by itself." The trial court denied Walker's request to redact the phrase "discourage someone from testifying against him" from the instruction. Evidence was presented that, while in jail, Walker called his girlfriend and asked if she was going to testify at his trial. When she said she would, Walker responded, "If you get up there with a lie . . . I'm going to tell the truth. I'm just telling you right now, like, I mean, I'm not going to spare you. If you want to lie on me, I'm going to tell the truth." "I'm protecting you. You ain't protecting me." The jury could reasonably find this exchange was an effort by Walker to discourage his girlfriend from testifying (or testifying truthfully) against him. We conclude the evidence was sufficient to warrant instructing the jury with the full language of CALCRIM No. 371.

Nor was an arguable issue created by the court's instruction of the jury with CALCRIM No. 372: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." In light of the evidence that Walker immediately left the scene of the shootings, the evidence warranted giving that instruction.

Finally, based on the facts set forth above, the verdict was supported by substantial evidence. (CALCRIM Nos. 520, 521, 600.)

As for the arguments made by Walker in his supplemental brief, we conclude they also raise no arguable issue. As discussed above, we find no instructional error by the trial court regarding Walker's self-defense (and imperfect self-defense) assertions. Nor was there any error in the instruction given to the jury on the element of voluntary manslaughter. The court properly instructed the jury under CALCRIM No. 570 on the elements of that charge.

Walker contends his trial counsel was ineffective because he failed to mention the "video" during the trial. In context, Walker seems to be referencing the

9

video footage of the shooting. Walker's trial counsel, however, mentioned the video throughout the trial, including in the opening statement, cross-examination of the forensic pathologist, cross-examination of one of the victims, Walker's direct examination , direct examination of a detective , and closing argument. No arguable issue is raised by counsel's supposed failure to mention the video.

Walker argues his trial counsel erred in various other ways, including failing to request a change of venue, introduce evidence of Walker allegedly having "ptsd or bps," make a second *Pitchess* motion,[6] obtain a forensic scientist, prove Walker acted in self-defense, or refute any suggestion that Walker's comments to his girlfriend were an attempt to dissuade his girlfriend from testifying against him. Walker asserts his trial counsel acknowledged his ineffectiveness by referring to himself as "a little old public defender" in closing argument. Trial counsel did not make that statement. While he did refer to himself as "the poor public defender," the comment was made in closing as part of an argument raising questions about the veracity of Walker's girlfriend's testimony about the shooting.[7] We do not find that any of the foregoing identified concerns regarding counsel's trial conduct and strategy raise an arguable issue.

Walker asserts his appellate counsel rendered ineffective assistance by "doing all of the wrong things and saying all of the wrong things," including stating Walker shot Rivera-Velasco twice. But the evidence clearly established that Walker did shoot Rivera-Velasco twice. To the extent Walker argues his counsel inaccurately suggested both shots were fired while Rivera-Velasco was walking toward Walker, the record shows appellate counsel did not make such an assertion. He argued what the

---

[6] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[7] Counsel argued: "But you got to put it in the proper perspective because the reality is, is once the shooting happened, and Mr. Walker drives [the girlfriend] to the place of safety, the [girlfriend's] family circled the wagons. And, guess what? Mr. Walker wasn't in that circle. They got a lawyer. This guy's stuck with the poor public defender. They circled the wagons, and he's not part of that circle."

evidence showed: that Walker's second shot at Rivera-Velasco—the shot to the face—was fired while Walker was returning to his own truck, after he had shot the four other victims.

"To make out a claim that counsel rendered constitutionally ineffective assistance, 'the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.'" (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.) It is not enough that errors had some conceivable effect on the outcome of the proceeding. (*Harrington v. Richter* (2011) 562 U.S. 86, 105.) "[P]rejudice must be affirmatively proved; the record must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" (*People v. Maury* (2003) 30 Cal.4th 342, 389.)

We have reviewed the entire record and conclude Walker failed to demonstrate that either his trial or his appellate counsel fell below an objective standard of reasonableness under prevailing professional norms. Even if he had made such a showing, Walker failed to carry his burden to show any resulting prejudice. Based on the overwhelming evidence against Walker—including the security camera footage of the shootings by Walker, evidence that Walker shot Rivera-Velasco once in the groin and again in the face, and the testimony by Walker's girlfriend that none of the occupants of the tan truck had weapons or did or said anything threatening prior to the shootings—Walker cannot show he would have had a reasonable probability of a better outcome if his lawyers had pursued the arguments, motions, or litigation strategy Walker now argues they should have.

11

In sum, we have independently reviewed counsel's *Wende* brief, Walker's supplemental brief, and the entire record in this matter. We do not find any arguably meritorious issue among those suggested either by counsel or by Walker, or in our own review of the record.

## DISPOSITION

The judgment is affirmed.

GOODING, J.

WE CONCUR:

GOETHALS, ACTING P. J.

DELANEY, J.