Filed 3/24/25  P. v. Studnicka CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DONALD STUDNICKA, Defendant and Appellant. | B331329 (Los Angeles County Super. Ct. No. SA107214) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph J. Burghardt, Judge.  Affirmed.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Blythe Leszkay and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted defendant Donald Studnicka of one count of assault with a deadly weapon. The trial court sentenced Studnicka to the midterm of three years in prison.

On appeal, Studnicka argues the trial court erred in denying his motion to dismiss the jury panel, declining to continue the trial to permit his counsel to conduct discovery on whether the jury panel was drawn from a fair cross-section of the community, and instructing the jury it could infer from evidence that Studnicka fled from the scene of the crime that he was aware of his guilt. In addition, Studnicka contends the cumulative effect of these errors deprived him of a fair trial.

We reject Studnicka's challenge to the denial of his motion to dismiss the jury panel because we are bound by state Supreme Court precedent requiring a defendant to show that an improper feature of the jury selection process systematically excluded members of a particular group from jury venires, and Studnicka does not claim to have satisfied that requirement. The trial court did not abuse its discretion in denying a request to continue the trial that Studnicka claims to have raised on the first day of jury selection. Lastly, the flight instruction did not reduce the prosecution's burden of proof, and Studnicka fails to establish that the evidence did not support issuance of the instruction. Finding no error, we affirm the judgment.

## BACKGROUND[1]

We summarize only those facts pertinent to our resolution of this appeal.

---

[1] We derive our Background in part from admissions made by the parties in their appellate briefing and assertions made by the Attorney General that Studnicka does not contest in his reply

The People filed an information charging Studnicka with one count of assault with a deadly weapon, in violation of Penal Code[2] section 245, subdivision (a)(1).  Each of the first two trials ended in a mistrial because the jury was unable to return a verdict.

At Studnicka's third trial, there was evidence that on the evening of September 18, 2022, Studnicka had a physical altercation with C.M. at a park.  The prosecution presented evidence that Studnicka pulled out a knife and attacked C.M. after C.M. declined Studnicka's offer to have a drink with him, and that C.M. was not armed.[3]  Studnicka took the stand and

brief.  (See *Williams v. Superior Court* (1964) 226 Cal.App.2d 666, 668, 674 [" 'An express concession or assertion in a brief is frequently treated as an *admission* of a legal or factual point, controlling in the disposition of the case.' "]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[A] reviewing court may make use of statements [in briefs and argument] . . . as admissions against the party [advancing them].' "]; *Reygoza v. Superior Court* (1991) 230 Cal.App.3d 514, 519 & fn. 4 (*Reygoza*) [criminal case in which the Court of Appeal assumed that an assertion made by respondent was correct because "defendant did not dispute respondent's claim in his reply"]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

    [2]  Undesignated statutory citations are to the Penal Code.

    [3]  Studnicka does not dispute, and thus tacitly agrees with, the Attorney General's assertions the prosecution offered evidence that one witness "did not see [C.M.] holding anything," another witness saw C.M. holding only an item "described as a 'Bobo straw[,]' " yet another witness did not see C.M. "ever hold a

testified that his encounter with C.M. was mutual combat and Studnicka was only defending himself. The prosecution offered evidence that C.M.'s friend, J.M., pepper sprayed Studnicka in his face until Studnicka stopped stabbing C.M.

In their briefing, the parties do not dispute that Studnicka ran away from the scene of the altercation after he had been pepper sprayed. The prosecution introduced evidence that when police responded to the incident, C.M. was bleeding, and that when Studnicka was later apprehended, he had a cut on his hand and another cut or laceration on or above his knee.

At the conclusion of the third trial, the jury found Studnicka guilty as charged. The trial court sentenced Studnicka to the midterm of three years in state prison. Studnicka timely appealed the judgment.

## DISCUSSION

Studnicka asserts the trial court erred in three respects: (1) denying his motion to dismiss the jury panel "as being unrepresentative because of the absence of Black male potential jurors in the jury pool"; (2) declining to grant a continuance of the trial to permit Studnicka's counsel to "investigate [his] claim of an unrepresentative jury venire further"; and (3) "giving CALCRIM No. 372, the flight instruction," to the jury. Studnicka also contends the cumulative effect of the trial court's errors warrants reversal of the judgment. As we explain below,

---

weapon," footage from the park's surveillance cameras "appeared to show [C.M.] holding a stick or a straw," and C.M. was not holding anything in his hand when officers later arrived at the scene. (See *Reygoza, supra*, 230 Cal.App.3d at p. 519 & fn. 4; *Rudick, supra*, 41 Cal.App.5th at pp. 89–90.)

4

Studnicka does not show the trial court erred. We thus affirm the judgment.

## A. The Trial Court Did Not Err In Denying Studnicka's Motion To Dismiss the Jury Panel Because He Failed To Show That an Improper Feature of the Jury Selection Process Systematically Excluded Members of a Distinctive Group

" 'Under the federal and state Constitutions, an accused is entitled to a jury drawn from a representative cross-section of the community. [Citations.] That guarantee mandates that the pools from which juries are drawn must not systematically exclude distinctive groups in the community. [Citation.]' " (*People v. Anderson* (2001) 25 Cal.4th 543, 566 (*Anderson*).) " 'The federal and state guarantees are coextensive, and the analyses are identical. [Citations.]' [Citation.]" (*People v. Currie* (2001) 87 Cal.App.4th 225, 232.)

In *Duren v. Missouri* (1979) 439 U.S. 357, the United States Supreme Court declared, "In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." (*Id.* at p. 364.) " 'If a defendant establishes a prima facie case of systematic underrepresentation, the burden shifts to the prosecution to provide either a more precise statistical showing that no constitutionally significant disparity exists or a compelling justification for the procedure that has resulted in the

5

disparity in the jury venire.  [Citation.]'  [Citation.]"  (*Anderson, supra*, 25 Cal.4th at p. 566.)

Our high court explained, " 'As to the third element of the *Duren* test, a defendant does not meet the burden of demonstrating that the underrepresentation was due to systematic exclusion, by establishing only statistical evidence of a disparity.  A defendant must show, in addition, that the disparity is the result of an improper feature of the jury selection process.  [Citations.]  When a county's jury selection criteria are neutral with respect to race, ethnicity, sex, and religion, the defendant must identify some aspect of *the manner in which those criteria are applied* (the probable cause of the disparity) that is constitutionally impermissible.  [Citations.]'  [Citation.]"  (*Anderson, supra*, 25 Cal.4th at pp. 566–567.)

Studnicka contends that "the third prong of . . . *Duren*[,] . . . as interpreted by the California Supreme Court in *People v. Anderson*, does not survive the adoption of the . . . Racial Justice Act . . . and is 'overly strict.' "  Studnicka claims "the adoption of the [Racial Justice Act] has fundamentally changed the landscape in terms of jury selection" such that he should not be required to "establish that the racial disparity [in the pool of potential jurors] . . . was the result of some 'constitutionally objectionable' procedure . . . ."  Studnicka further argues that "the burden should have shifted to the prosecution to refute [his] challenge to the jury venire" because "the California Supreme Court's interpretation of the third prong of *Duren* is outdated" and he "met the first two prongs of the *Duren* test . . . ."[4]

---

[4] Because we reject Studnicka's argument that we should depart from *Anderson*'s interpretation of *Duren*'s third prong, we do not decide whether he satisfied *Duren*'s first and second

6

"Effective January 1, 2021, the Racial Justice Act, which is codified in a scheme of interrelated statutes in the Penal Code (§§ 745, 1473, subd. (f), 1473.7, subd.(a)(3)), states that '[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin.' (§ 745, subd. (a).)" (*Young v. Superior Court* (2022) 79 Cal.App.5th 138, 147 (*Young*).) "[S]ection 745, subdivision (a), a provision of the Racial Justice Act, sets forth four categories of conduct that, if proven by a preponderance of the evidence, establish a violation of the [A]ct." (*People v. Lawson* (2025) 108 Cal.App.5th 990, 998.) For instance, "a violation of the [A]ct" occurs "if, '[d]uring the defendant's trial, in court and during the proceedings, the judge, an attorney in the case, a law enforcement officer involved in the case, an expert witness, or juror, used racially discriminatory language about the defendant's race, ethnicity, or national origin, or otherwise exhibited bias or animus towards the defendant because of the defendant's race, ethnicity, or national origin, whether or not purposeful.' " (See *ibid.*)

Studnicka insists he is not "argu[ing] that the [Racial Justice Act] has literally altered the three-prong *[Duren]* test . . . ." Rather, Studnicka argues the Racial Justice Act "rejects the jurisprudential paradigm created by the United States Supreme Court in *McCleskey v. Kemp* (1987) 481 U.S. 279, which tolerates racially disparate outcomes unless an individual defendant can establish that he was the victim of intentional

---

prongs. (See *Anderson*, *supra*, 25 Cal.4th at p. 566 [holding that a defendant must satisfy all three *Duren* prongs to " ' "establish a prima facie violation of the fair-cross-section requirement" ' "].)

7

discrimination."[5]  He asserts the Legislature's rejection of *McCleskey* renders untenable *Anderson*'s holding that a defendant must show that an improper feature of the jury selection process caused a racial disparity in the venires from which jurors are selected.

Studnicka thus is asking us to ignore our Supreme Court's construction of the federal and state Constitutions.  This we cannot do.  (See *Tran v. Nguyen* (2023) 97 Cal.App.5th 523, 531 [" 'Although the California Supreme Court is free to overrule its own prior decisions, the doctrine of stare decisis compels lower court tribunals to follow the Supreme Court whatever reason the intermediate tribunals might have for not wishing to do so.' "].)  Further, because Studnicka does not claim to have met the third *Duren* prong as interpreted by *Anderson*, his challenge to the trial court's denial of his motion to dismiss the jury panel necessarily fails.[6]

---

[5]  (See also *Young, supra,* 79 Cal.App.5th at pp. 149–150 [observing that in enacting the Racial Justice Act, the Legislature "[s]tat[ed] its intent to depart from the discriminatory purpose paradigm in federal equal protection law," and "declare[d] an objective 'to reject the conclusion that racial disparities within our criminal justice [system] are inevitable, and to actively work to eradicate them[,]' " citing, inter alia, *McCleskey, supra,* 481 U.S. at p. 292].)

[6]  Studnicka also contends that the "legislative purpose behind" newly added Code of Civil Procedure section 231.7, which "specifically addresse[s] the discriminatory use [of] peremptory challenges and challenges for cause, . . . provides further support for abandoning the old approach to challenges to a jury venire." We reject this argument for the same reason that Studnicka's

8

**B.	Studnicka Does Not Demonstrate the Trial Court Erred By Failing To Continue the Trial To Allow His Counsel To Conduct Discovery on the Third Prong of the *Duren* Test**

Section 1050, subdivision (e) provides in pertinent part: "Continuances shall be granted only upon a showing of good cause." (§ 1050, subd. (e).)  "Under section 1050, subdivision (e), '[a] "trial court has broad discretion to determine whether good cause exists to grant a continuance of the trial.  [Citation.]  A showing of good cause requires a demonstration that counsel and the defendant have prepared for trial with due diligence." [Citation.]  Such discretion "may not be exercised so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." [Citation.]  "To effectuate the constitutional rights to counsel and to due process of law, an accused must . . . have a reasonable opportunity to prepare a defense and respond to the charges." [Citation.]' [Citation.]  '[B]road discretion must be granted trial courts on matters of continuances; only an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay" violates the right to the assistance of counsel.' [Citations.]" (*People v. Alexander* (2010) 49 Cal.4th 846, 934–935.)

Studnicka maintains if we do not find that "the *Anderson* interpretation of the third prong of *Duren*" is an "outdated" "judicially created procedure," we should conclude the trial court abused its discretion by refusing to continue the trial to allow his counsel to conduct "additional discovery" to "fully address th[e]

---

reliance on the Racial Justice Act fails, to wit, we are bound by *Anderson*'s interpretation of *Duren*'s third prong.

third *[Duren]* prong." Although Studnicka acknowledges his trial counsel did not move to dismiss the panel until the first day of jury selection, he insists his counsel acted diligently because he could not have been aware of the potential *Duren* claim until he saw "the racial makeup of the jury panel [that] was assembled for the third trial." According to Studnicka, his counsel observed that the panel of 62 potential jurors contained no "Black male potential jurors" and only two African-American women.

As a preliminary matter, we note Studnicka's trial counsel did not state he needed a continuance to conduct discovery on the third *Duren* prong. Instead, counsel asked the trial court to "pause th[e] proceedings and have the sheriff's department or court personnel . . . contact the jurors who did not show up . . . and inform[ them] that they do need to come in for their jury service . . . ." Counsel also alluded to the possibility that the court could "order a county-wide panel," and asked the court to issue an order "making sure that the jury commissioner has indeed complied with the [statutory] requirements" for compiling the list of potential jurors. Studnicka's trial counsel concluded his oral motion with the following statement: "I'm asking the court on behalf of Mr. Studnicka to insure his right to a trial of his peers and a trial by a fair cross-section representative of the community that the court either take steps to get the other jurors who are summoned who are not here into this courtroom so that they can be potential jurors or dismiss this panel and order a new one."

Assuming arguendo that counsel's statements constitute a request for a continuance to undertake discovery on *Duren*'s third prong, Studnicka's claim of error fails because we reject his assertion that "defense counsel [could not have] identified the

10

problem [until] . . . he saw in person the actual pool of available jurors." As our colleagues in Division Two of the First District pointed out, "[The defendant] is not entitled to a panel that represents a cross-section of the community. Rather, he is entitled to a panel *drawn from* a representative cross-section of the community. Thus, a challenge to the jury panel is always necessarily a challenge not to the composition of the panel but to the procedure by which the panel is composed. Indeed, the actual composition of the jury panel in a defendant's case is irrelevant to a challenge to the jury panel." (*People v. De Rosans* (1994) 27 Cal.App.4th 611, 621 (*De Rosans*).)

The *De Rosans* court further explained, "The *Duren* elements of a prima facie showing of a fair cross-section violation are consistent with this understanding. The second *Duren* prong requires a showing that the cognizable group is underrepresented in *venires* from which *juries* are selected, not on the panel from which the defendant's jury is selected. The third *Duren* prong requires a showing that the system for selecting prospective jurors causes this underrepresentation; whether underrepresentation on the defendant's particular panel or panels resulted is incidental. The evidence required for the prima facie showing is therefore entirely available before voir dire begins." (*De Rosans, supra*, 27 Cal.App.4th at p. 621, fn. omitted.)

Applying these principles to the case before it, the *De Rosans* court found that the trial court did not abuse its discretion in denying defense counsel's request, made during jury selection, for a continuance to "prepare and file a *[Duren]* challenge to the jury panel." (See *De Rosans, supra*, 27 Cal.App.4th at pp. 614, 616–617, 619–620, 622.) Because the

11

composition of the particular jury panel assigned to Studnicka's case has no bearing on his *Duren* claim, we likewise conclude the trial court did not abuse its discretion in denying a continuance that Studnicka claims to have requested on the first day of jury selection.

Studnicka intimates in his reply brief that *Anderson* supports his position that trial counsel acted diligently by requesting a continuance upon observing the racial composition of the jury panel. We disagree.

In *Anderson*, the defendant was convicted of, inter alia, two counts of first degree murder and sentenced to death. (*Anderson*, *supra*, 25 Cal.4th at p. 559.) On appeal from the first trial, the high court "affirmed the guilt judgment . . . and reversed the penalty judgment . . . ." (*Ibid.*) On remand, "less than one month before the penalty retrial was then scheduled to begin, [the] defendant moved to quash the petit jury panel on [the] ground[ ] that . . . the panel failed to represent a fair cross-section of the community." (See *id.* at pp. 559, 564.) Unlike Studnicka, the defendant in *Anderson* did not rely upon his counsel's visual observations of the racial makeup of the panel. (See *id.* at pp. 564–565.) Instead, the defendant's motion was based on "a comparative ethnic and demographic survey of persons who appeared at the Indio/Palm Springs courthouse in response to superior court jury summons" over "an eight-week period" that ended more than two years before the motion was filed, census data, and evidence concerning the county's process for selecting jurors. (See *id.* at pp. 564–565.) The defendant also moved to continue the trial "pending further study of the underrepresentation issue." (See *id.* at pp. 564–566.)

The trial court denied the motions to quash the petit jury panel and continue the trial. (*Anderson*, *supra*, 25 Cal. 4th at pp. 565–566.) The Supreme Court found the trial court did not err in denying the motion to quash because the defendant failed to satisfy *Duren*'s third prong, given that " 'there was an insufficient showing that any discrepancy in the jury pool was attributable to "systematic exclusion[.]" ' " (See *Anderson*, at pp. 566–568.) The high court further concluded "the [trial] court's denial of a continuance was amply justified" because the defendant presented the "belated request for further delay" "a scarce month before trial was scheduled to begin" and it was "based solely on . . . unsupported speculation" that constitutionally impermissible jury selection procedures were employed. (See *id.* at p. 568.) In short, *Anderson* offers no support for Studnicka's assertion that his trial counsel acted diligently in waiting until the first day of jury selection to challenge the racial composition of the panel.

Accordingly, Studnicka fails to establish the trial court abused its discretion by not continuing the trial to permit his counsel to gather evidence in support of the motion to dismiss the jury panel.

## C. Studnicka Fails To Establish the Trial Court Erred In Issuing CALCRIM No. 372 to the Jury

The trial court provided CALCRIM No. 372 to the jury, which states: "If the defendant fled or tried to flee immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled or tried to flee, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled or tried to flee cannot prove guilt by itself."

13

Studnicka argues that by instructing the jury with CALCRIM No. 372, the trial court violated his federal right to due process. Specifically, he contends the instruction "reduces the prosecution's burden of proof and is inconsistent with the presumption of innocence" because "people of color . . . have objective reasons to fear contact with police even when they have done nothing wrong . . . ."[7] Studnicka further contends the court should not have issued the instruction because "[t]he evidence here belied any . . . permissible inference" that by leaving the scene of the altercation, Studnicka manifested his awareness that he assaulted C.M.[8]

Because we assume for the sake of argument the correctness of the factual premise underlying Studnicka's constitutional challenge, that is, that "people of color . . . have objective reasons to fear contact with police even when they have done nothing wrong," we independently review his due process

---

[7] The parties agree that Studnicka is a Black man.

[8] Additionally, for the first time in his reply brief, Studnicka argues that "[t]he CALCRIM No. 372 flight instruction is only appropriate when there is specific, clear evidence the accused fled due to consciousness of guilt after the crime was committed," and that "[a] flight instruction is improper unless the evidence is sufficient to support" " 'a chain of unbroken inferences from the defendant's behavior to the defendant's guilt of the crime charged.' " Studnicka also raises in his reply, but omits from his opening brief, his argument that the flight instruction violated his right to due process under our state's Constitution. We disregard these belated contentions. (*People v. Taylor* (2004) 119 Cal.App.4th 628, 642–643 [concluding that a defendant had forfeited a contention by raising it for the first time in a reply brief].)

challenge to the flight instruction. (See *In re J.R.* (2022) 82 Cal.App.5th 569, 587–588 [reviewing de novo a due process claim that presented "a purely legal question"].)

" '[A] permissive inference violates due process "only if the suggested conclusion is not one that reason and common sense justify in light of the proven facts before the jury[.]" . . . . [Citation.]' [Citation.]" (See *People v. Price* (2017) 8 Cal.App.5th 409, 456.) The inference that a defendant exhibited consciousness of guilt by fleeing " ' "immediately after the commission of a crime" ' " is consistent with reason and common sense. (See *ibid.*) Furthermore, "CALCRIM No. 372 [does not] lessen the prosecution's burden [of proof]" because the instruction "leaves it 'up to you [the jury] to decide the meaning and importance of that conduct' and . . . limits the use of flight evidence by providing that it is not alone sufficient to prove guilt." (See *Price*, *supra*, at p. 458.) Accordingly, Studnicka's due process challenge to the flight instruction fails.[9]

As to Studnicka's assertion the evidence did not support the trial court's issuance of CALCRIM No. 372, "a flight instruction is appropriate where there is substantial evidence of flight by the defendant apart from his identification as the perpetrator, from which the jury could reasonably infer a consciousness of guilt."[10] (See *People v. Rhodes* (1989) 209 Cal.App.3d 1471, 1476 (*Rhodes*), italics omitted.) Under the substantial evidence standard, "we view the evidence most

---

[9] Studnicka does not argue that CALCRIM No. 372 violates his constitutional right to equal protection.

[10] Studnicka acknowledges he was the individual who had the physical altercation with C.M.

15

favorably to the judgment presuming the existence of every fact that reasonably may be deduced from the record in support of the judgment." (See *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1290.)

In support of Studnicka's position that his decision to leave "the scene after the incident" cannot be interpreted "as flight due to consciousness of guilt," Studnicka argues that he was merely "try[ing to] find water to wash the pepper spray out of his eyes . . . ." Studnicka further argues he "believed his co-combatant had a weapon that he used to attack [Studnicka]." Although Studnicka does not support these assertions with citations to the trial evidence, Studnicka seems to be relying upon his assertion that at trial, he testified that (1) C.M. struck him first, lunged at his leg and stabbed him twice above the knee; and (2) Studnicka fled the scene to wash the pepper spray off his face and eyes at a McDonald's restaurant.

In deciding whether to issue CALCRIM No. 372 to the jury, the trial court did not have to credit Studnicka's self-serving testimony as to his reasons for leaving the scene. (See *San Diego Police Dept. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 575–576 [holding that under the substantial evidence standard, an appellate court " 'give[s] appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence' "].) Indeed, the existence of "[a]lternative explanations for flight conduct go[es] to the weight of the evidence, which is a matter for the jury, not the court, to decide." (See *Rhodes*, *supra*, 209 Cal.App.3d at p. 1477.) Studnicka's

16

contentions thus fail under the deferential substantial evidence standard of review.[11]

In sum, we reject Studnicka's arguments that the trial court's issuance of CALCRIM No. 372 violated his right to due process and that the instruction lacked evidentiary support.

## D.    Studnicka's Cumulative Error Claim Fails

Studnicka argues, "Even if the errors [he raises] . . . do not require reversal when examined separately," their "cumulative impact . . . denied [him] due process and a fair trial." (Boldface & capitalization omitted from second quotation.) We have concluded the trial court did not err in denying Studnicka's motion to dismiss the jury panel, declining to continue the trial to permit Studnicka's counsel to prepare a *Duren* motion, and providing CALCRIM No. 372 to the jury. (Discussion, parts A–C, *ante*.) We thus reject his claim of cumulative error. (See

---

[11] At oral argument, Studnicka's appellate counsel asserted the trial court denied his client's request to introduce at trial a video showing that several months prior to his altercation with C.M., police had subjected Studnicka to excessive force. Counsel intimated that had this video been presented, the jury could have found that Studnicka left the scene of the altercation with C.M. merely to avoid being harmed by the police.

Although Studnicka makes oblique references to an alleged excessive force incident in his appellate briefs, absent from his briefing is any argument the trial court erred in excluding the video depicting this incident. Accordingly, we do not address this issue further. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration.' "].)

*People v. Kocontes* (2022) 86 Cal.App.5th 787, 891 [indicating that a necessary predicate of a cumulative error claim is the existence of " 'a series of trial errors' "].)

## DISPOSITION

We affirm the judgment.
<u>NOT TO BE PUBLISHED.</u>

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.